NOTICE

Decision filed 12/22/09. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

NO. 5-09-0067

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_____

CAROL HOLLINGSHEAD, as Independent Administrator of the Estate of Selma Elliott,

    Plaintiff-Appellee,

v.

A.G. EDWARDS & SONS, INC., and LEONARD SUESS,

    Defendants-Appellants.

) Appeal from the
) Circuit Court of
) Madison County.
)
)
) No. 08-L-858
)
)
) Honorable
) Daniel J. Stack,
) Judge, presiding.

_____

JUSTICE SPOMER delivered the opinion of the court:

The defendants, A.G. Edwards & Sons, Inc., and Leonard Suess, appeal the order of the circuit court of Madison County that denied their motion to dismiss and to compel the arbitration of the claims raised in a complaint filed by the plaintiff, Carol Hollingshead, as the independent administrator of the estate of Selma Elliott. For the reasons that follow, we reverse and remand for further proceedings not inconsistent with this opinion, including an evidentiary hearing should the plaintiff so desire.

FACTS

The plaintiff filed a complaint in the circuit court of Madison County alleging the following facts. The decedent, Selma Elliott, passed away on November 3, 2003, at the age of 101 years. During the decedent's lifetime, she created an investment account with the defendant, A.G. Edwards & Sons, Inc. (Edwards), which was managed by a financial consultant, Leonard Suess. During her later years, the decedent granted a power of attorney to her daughter, Judy Suess, who is the spouse of Leonard Suess, to manage the decedent's

1

assets, property, and health care needs on her behalf. During her years, the decedent accumulated a large block of Merck Company (Merck) stock. In February 2001, the decedent's 11,000 shares of Merck stock had a value of approximately $985,000. Utilizing the value in the decedent's Merck stock, the defendants opened a margin account for the decedent after she had turned 90 years old and acquired numerous stocks such as Ariel Corp., Digital Island, Eageltech, Qualcom, and Vaxgen. Thereafter, the stock values in the decedent's portfolio, including the value of the Merck stock, began to drop significantly. Consequently, the defendants began selling the decedent's Merck stock to cover margin calls. According to the complaint, these sales created substantial tax liability on the sale of the decedent's stock that could have easily been avoided if the Merck stock had been held until the decedent's death.

Count I of the complaint alleges a cause of action for a breach of fiduciary duty based on the defendants' relationship to the decedent as her financial advisors. Count I alleges that, as the decedent's financial advisors, the defendants were in a fiduciary position to the decedent and breached their fiduciary duty to invest her assets in a manner consistent with her financial status, tax status, and investment objectives. Count II alleges a cause of action for a breach of contract on the basis that the contracts between the defendants and the decedent required that the defendants invest the decedent's assets in a manner consistent with her investment objectives and her age, as well as in accordance with the rules and regulations governing their industry. Count III alleges a cause of action for negligence on the basis that the defendants, who held themselves out as having superior knowledge and skill to the decedent, breached their duty of care in the investment of the decedent's funds.

The defendants filed a motion to dismiss the plaintiff's complaint and to compel arbitration on the basis that the decedent's investment account was covered by numerous contracts, all of which include an arbitration provision that provides that all controversies

2

between the parties are to be determined by arbitration. In support of the motion, the defendants attached the affidavit of Trish Unterberg, who provides a foundation for the attached "Asset Account Agreement," "Transfer on Death Agreement," "Options Agreement," and "Margin Agreement" relating to the decedent's investment account. All four contracts state in paragraph 1, "This agreement covers all accounts that I have with Edwards at any time." In addition, all four contracts contain an arbitration provision, which provides, *inter alia*, as follows:

>"I agree, and by carrying my account, Edwards agrees[,] that all controversies between me and Edwards or any of its present or former officers, directors, agents[,] or employees will be determined by arbitration."

The "Transfer on Death Agreement," "Options Agreement," and "Margin Agreement" are signed "Selma Elliott" and are dated January 10, 2001. The "Asset Account Agreement" is signed "Judy Suess POA" and is dated February 1, 2001.

The record contains no response to the motion to dismiss and to compel arbitration. After hearing oral argument, which is not of record, the circuit court entered an order denying the motion to dismiss and compel arbitration. The order contained no findings of fact or conclusions of law. The defendants filed a timely notice of interlocutory appeal pursuant to Illinois Supreme Court Rule 307(a) (188 Ill. 2d R. 307(a)).

ANALYSIS

"An order [granting or denying a motion] to compel arbitration is injunctive in nature and is appealable under Supreme Court Rule 307(a)(1) (188 Ill. 2d R. 307(a)(1))." *Carter v. SSC Odin Operating Co., LLC*, 381 Ill. App. 3d 717, 719-20 (2008). "In an interlocutory appeal pursuant to Rule 307(a)(1), the only question *** is whether there was a sufficient showing made to the trial court to sustain its order granting or denying the interlocutory relief sought." *Mohanty v. St. John Heart Clinic, S.C.*, 358 Ill. App. 3d 902, 905 (2005), *aff'd*, 225

3

Ill. 2d 52 (2006). "In an appeal from a denial of a motion to compel arbitration without an evidentiary hearing, the standard of review is *de novo*." *Ragan v. AT&T Corp.*, 355 Ill. App. 3d 1143, 1147 (2005).

It is clear that the arbitration provisions at issue are governed by the Federal Arbitration Act (9 U.S.C. §1 *et seq.* (2006)). As explained in *Prudential Securities Inc. v. Hornsby*, 865 F. Supp. 447, 449 (N.D. Ill. 1994), with citation to relevant decisions of the United States Supreme Court, the Federal Arbitration Act applies to arbitration provisions in securities brokerage contracts:

> "The Federal Arbitration Act creates a body of substantive federal arbitration law governing any agreement that is within its coverage. [Citation.] The Act applies to written arbitration provisions in any contract evidencing a transaction involving commerce [citations], and its reach is coextensive with Congressional power to regulate under the Commerce Clause. [Citations.] It is axiomatic that the purchase and sale of securities relates to interstate commerce."

In the case at bar, the defendants argue that the circuit court erred in denying their motion to dismiss and to compel arbitration because the contracts containing the arbitration provisions at issue are the only evidence in the record and the plaintiff's complaint falls squarely within the scope of those provisions. In response, the plaintiff argues that the arbitration provisions are unenforceable on the basis of procedural and substantive unconscionability and undue influence. In reply, the defendants assert that whether these defenses apply to invalidate the arbitration provision is a question for the arbitrator to determine in the first instance. Alternatively, the defendants argue that the plaintiff has failed to prove the applicability of the contract defenses she has raised.

We turn first to the defendants' argument that the applicability of the contract defenses in this case would be a question for the arbitrator to determine. "The question whether the

4

parties have submitted a particular dispute to arbitration, *i.e.*, the '*question of arbitrability*,' is 'an issue for judicial determination [u]nless the parties clearly and unmistakably provide otherwise.' " (Emphasis in original.) *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83, 154 L. Ed. 2d 491, 497, 123 S. Ct. 588, 591 (2002) (quoting *AT&T Technologies, Inc. v. Communications Workers of America*, 475 U.S. 643, 649, 89 L. Ed. 2d 648, 656, 106 S. Ct. 1415, 1418 (1986)). Accordingly, the court is to determine "certain gateway matters, such as whether the parties have a valid arbitration agreement at all or whether a concededly binding arbitration clause applies to a certain type of controversy." *Green Tree Financial Corp. v. Bazzle*, 539 U.S. 444, 452, 156 L. Ed. 2d 414, 422, 123 S. Ct. 2402, 2407 (2003).

Citing *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 449, 163 L. Ed. 2d 1038, 1046, 126 S. Ct. 1204, 1210 (2006), the defendants argue that because the defenses raised by the plaintiff challenge the formation of the contract as a whole, and not specifically the arbitration clause, the applicability of these defenses must be determined by the arbitrator. This argument results from a misreading of the *Buckeye Check Cashing, Inc.* decision. In *Buckeye Check Cashing, Inc.*, the plaintiffs brought a putative class action lawsuit against a lender, alleging that the contract containing the arbitration provision at issue in that case was illegal because it violated the state's usury laws. 546 U.S. at 443, 163 L. Ed. 2d at 1042, 126 S. Ct. at 1207. The United States Supreme Court, reasoning that because the arbitration provision is separately enforceable and severable from the remainder of the contract, concluded that the plaintiffs' allegation did not impact the validity of the arbitration clause. See *Buckeye Check Cashing, Inc.*, 546 U.S. at 445-46, 163 L. Ed. 2d at 1044, 126 S. Ct. at 1209. In so doing, the Court performed its gatekeeping function by determining that the arbitration clause was separately enforceable and that the plaintiffs' complaint, that the substance of the contract was illegal, should be determined by the arbitrator. See *Buckeye Check Cashing, Inc.*, 546 U.S. at 445-46, 163 L. Ed. 2d at 1044, 126 S. Ct. at 1209.

5

Here, unlike in *Buckeye Check Cashing, Inc.*, the plaintiff's complaint does not involve a challenge to the contracts containing the arbitration provisions. In fact, in count I, the plaintiff alleges a breach of a fiduciary duty arising from the brokerage relationship created by these contracts, in count II, the plaintiff alleges a breach of these contracts, and in count III, the plaintiff alleges a negligent breach of a professional duty arising from the relationship created by these contracts. While the plaintiff is raising contract defenses to the applicability of the arbitration provisions that could also be raised to challenge the validity of the remainder of the contracts, the plaintiff is only using these defenses to challenge the validity of the arbitration provisions themselves. More importantly, the severability of the arbitration provisions from the remainder of the contracts does not impact arbitrability because the defenses raised by the plaintiff could serve to invalidate the arbitration clauses despite their severability. To read *Buckeye Check Cashing, Inc.* to require the arbitrator to determine whether the arbitration clause is enforceable merely because the defenses raised could impact the validity of the contract as a whole, even if they are not being raised in that manner, would effectively eviscerate the line of United States Supreme Court cases that require the court to determine arbitrability in its role as gatekeeper. See *Green Tree Financial Corp.*, 539 U.S. at 452, 156 L. Ed. 2d at 422, 123 S. Ct. at 2407. We decline to adopt such an expansive reading. Thus, we find that the court, rather than the arbitrator, must determine the threshold question of whether the defenses raised by the plaintiff invalidate the arbitration provisions.

We now turn to the issue of the applicability of the defenses raised by the plaintiff to invalidate the arbitration provisions in the contracts. Section 2 of the Federal Arbitration Act provides as follows:

"A written provision in *** a contract *** to settle by arbitration a controversy thereafter arising out of such contract *** or an agreement in writing to submit to

6

arbitration an existing controversy arising out of such a contract *** shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. §2 (2006).

The United States Supreme Court has confirmed that, pursuant to section 2 of the Federal Arbitration Act, generally applicable contract defenses arising from state law may be applied to invalidate arbitration agreements. *Doctor's Associates, Inc. v. Casarotto*, 517 U.S. 681, 687, 134 L. Ed. 2d 902, 909, 116 S. Ct. 1652, 1656 (1996). Because unconscionability and undue influence are generally applicable contract defenses, we must determine whether the record supports a finding that the defenses are applicable to invalidate the arbitration provisions at issue. In order to do this, we must first address the issue of the burden of proof.

" 'A motion to compel arbitration and dismiss the lawsuit is essentially a motion pursuant to section 2-619(a)(9) [of the Illinois Code of Civil Procedure (735 ILCS 5/2-619(a)(9) (West 2006))] to dismiss based on the exclusive remedy of arbitration.' " *Griffith v. Wilmette Harbor Ass'n*, 378 Ill. App. 3d 173, 180 (2007) (quoting *Travis v. American Manufacturers Mutual Insurance Co.*, 335 Ill. App. 3d 1171, 1174 (2002)). The right to arbitration is treated as "affirmative matter" that defeats the claim. *Griffith*, 378 Ill. App. 3d at 180. If the "affirmative matter" asserted in a section 2-619 motion to dismiss is not apparent on the face of the complaint, the motion must be supported by affidavit. *Kedzie & 103rd Currency Exchange, Inc. v. Hodge*, 156 Ill. 2d 112, 116 (1993). By presenting an affidavit supporting the basis for the motion, the defendant satisfies the initial burden of going forward on the motion, and the burden then shifts to the plaintiff. *Hodge*, 156 Ill. 2d at 116. In order to establish that the motion is unfounded, a counteraffidavit or other proof is necessary to refute the evidentiary facts properly asserted by the affidavit supporting the motion. *Hodge*, 156 Ill. 2d at 116. "The trial court's decision to compel arbitration is not discretionary." *Griffith*, 378 Ill. App. 3d at 180. " 'Where there is a valid arbitration

7

agreement and the parties' dispute falls within the scope of that agreement, arbitration is mandatory and the trial court must compel it.' " *Griffith*, 378 Ill. App. 3d at 180 (quoting *Travis*, 335 Ill. App. 3d at 1175).

Here, the defendants filed a motion to dismiss and to compel arbitration and supported their motion with the contracts containing the arbitration provisions and an affidavit establishing their evidentiary foundation. Because all four contracts cover all the accounts the decedent had with Edwards at any time and the arbitration provision covers all the controversies between Edwards and the decedent, her executors, or assigns, the plaintiff's complaint falls within the scope of all four arbitration provisions. Because the plaintiff's complaint falls within the scope of the arbitration provisions, the defendants met their initial burden of going forward with their motion and the burden shifted to the plaintiff to establish a defense to the validity of all four arbitration provisions by counteraffidavit or other proof. The plaintiff filed no counteraffidavits and presented no evidence to the circuit court regarding the facts and circumstances surrounding the making of the contracts. Rather, the plaintiff relies solely on the unverified general allegations of the complaint with regard to the decedent's age and the relationship of the parties to support the defenses that the plaintiff relies upon on appeal. The plaintiff did not provide the circuit court with any evidence regarding these facts. Accordingly, we find that the plaintiff did not meet her burden of proof regarding the contract defenses she has raised.

In addition, even if it were sufficient for the plaintiff to rely on her unverified allegations to meet her burden of proof, we find that the facts of the complaint, standing alone, are insufficient to support any of the defenses raised by the plaintiff.

Under Illinois law, procedural unconscionability is evaluated as follows:

"Procedural unconscionability consists of some impropriety during the process of forming the contract depriving a party of a meaningful choice. [Citations.] Factors

8

to be considered are all the circumstances surrounding the transaction[,] including the manner in which the contract was entered into, whether each party had a reasonable opportunity to understand the terms of the contract, and whether important terms were hidden in a maze of fine print; both the conspicuousness of the clause and the negotiations relating to it are important, albeit not conclusive factors in determining the issue of unconscionability." *Frank's Maintenance & Engineering, Inc. v. C.A. Roberts Co.*, 86 Ill. App. 3d 980, 989-90 (1980).

Here, even assuming the allegations in the complaint are true, there is simply not enough evidence in this record for the circuit court to make an informed decision regarding procedural unconscionability. The arbitration provisions are in bold print in the same font as the remainder of the contracts. Other than the advanced age of the decedent and the familial relationship between the decedent and her broker, Leonard Suess, the court was presented with no evidence regarding the circumstances surrounding the decedent's signing of the contracts. It has long been held that advanced age alone is not sufficient to show that the decedent was incapable of transacting her own business. See, *e.g.*, *Johnson v. Watson*, 169 Ill. App. 218 (1912). In addition, there is nothing procedurally unconscionable, *per se*, about the decedent executing a contract for an investment account merely because her relative was the broker. We find that, absent an evidentiary hearing, the circuit court could not have found the arbitration provisions at issue to be procedurally unconscionable based on the allegations of the complaint standing alone.

The plaintiff also argues that the facts alleged in the complaint are sufficient to support a finding of undue influence. We disagree. There is no evidence in the record regarding what influence Leonard and Judy Suess exercised over the decedent at the time she executed the contracts. "What constitutes undue influence cannot be defined by fixed words and will depend upon the circumstances of each case." *In re Estate of Hoover*, 155 Ill. 2d

9

402, 411 (1993). Here, the circuit court simply had no evidence of the circumstances surrounding the signing of the contracts.

Citing *White v. Raines*, 215 Ill. App. 3d 49, 59 (1991), the plaintiff argues that the fact that Judy Suess became the decedent's attorney in fact on some unspecified date and signed the "Asset Account Agreement" with a power of attorney in February 2001 creates a presumption that the contracts were fraudulent and that the defendants have the burden of proving by clear and convincing evidence that the contracts were fair and equitable. The plaintiff's argument misapplies the holding in *White* to the facts alleged in the complaint. While it is true that a power of attorney gives rise to a general fiduciary relationship between the grantor of the power and the grantee as a matter of law, and "[o]nce the petitioner has shown that a fiduciary relationship exists, the presumption is that a transaction between the dominant and servient parties which profits the dominant party is fraudulent" (*White*, 215 Ill. App. 3d at 59), the facts alleged in the complaint, standing alone, do not create this presumption with regard to the contracts containing the arbitration provisions. The record shows that the decedent signed the "Transfer on Death Agreement," "Options Agreement," and "Margin Agreement" on January 10, 2001. The "Asset Account Agreement" is signed "Judy Suess POA" and is dated February 1, 2001. There is no evidence that Judy Suess had a power of attorney on January 10, 2001, and all three contracts signed by the decedent on that date contain broad arbitration provisions that would encompass the present lawsuit. In short, there is simply not enough evidence in this record to determine whether undue influence existed. An evidentiary hearing would be required for the circuit court to make a determination regarding undue influence.

Finally, the plaintiff argues that the arbitration provisions are substantively unconscionable because it would cost $1,575 to arbitrate, because the arbitration forum–the Financial Industry Regulatory Authority–is inherently biased in favor of the industry, and

10

because the arbitration provisions result in the waiver of a right to judicial review of an adverse decision. Assuming, without deciding, that the allegations of cost and bias would support a finding of substantive unconscionability, the record is devoid of any evidence regarding the costs of arbitration, the estate's ability to pay the costs, or a comparison of the costs of arbitration versus the costs of litigation. In addition, the plaintiff presented no evidence to support her allegations of bias on the part of the Financial Industry Regulatory Authority.

We turn now to the plaintiff's argument that the decedent's waiver of the right to judicial review under the arbitration provisions supports a finding of substantive unconscionability. Because, as set forth above, the arbitration provisions at issue are governed by the Federal Arbitration Act, sections 9 and 10 of the Federal Arbitration Act provide the exclusive grounds for obtaining judicial review of arbitration awards. 9 U.S.C. §§9, 10 (2006). The United States Supreme Court has clearly held that the parties cannot contract around these provisions. *Hall Street Associates, L.L.C. v. Mattel, Inc.*, 552 U.S. 576, ___, 170 L. Ed. 2d 254, 266, 128 S. Ct. 1396, 1406 (2008). To hold that this condition, inherent in arbitration provisions in consumer contracts, renders the provision unenforceable is to defy Federal Arbitration Act preemption. We decline to do so.

CONCLUSION

For the foregoing reasons, the order of the circuit court of Madison County that denied the defendants' motion to dismiss and to compel arbitration is reversed, and the cause is remanded for further proceedings not inconsistent with this opinion, including an evidentiary hearing should the plaintiff so desire.


Reversed; cause remanded.

11

CHAPMAN and STEWART, JJ., concur.

NO. 5-09-0067

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

<table>
<tr><td>CAROL HOLLINGSHEAD, as Independent Administrator of the Estate of Selma Elliott,</td><td>) ) )</td><td>Appeal from the Circuit Court of Madison County.</td></tr>
<tr><td>Plaintiff-Appellee,</td><td>) )</td><td></td></tr>
<tr><td>v.</td><td>)</td><td>No. 08-L-858</td></tr>
<tr><td>A.G. EDWARDS & SONS, INC., and LEONARD SUESS,</td><td>) ) ) )</td><td>Honorable Daniel J. Stack,</td></tr>
<tr><td>Defendants-Appellants.</td><td>)</td><td>Judge, presiding.</td></tr>
</table>

**Opinion Filed**: December 22, 2009

**Justices**: Honorable Stephen L. Spomer, J.

Honorable Melissa A. Chapman, J., and
Honorable Bruce D. Stewart, J.,
Concur

**Attorney for Appellants**

Eric D. Martin, Husch, Blackwell, Sanders, LLP, 190 Carondelet Plaza, Suite 600, St. Louis, MO 63105

**Attorneys for Appellee**

Holly A. Reese, Mark C. Goldenberg, Goldenberg, Heller, Antognoli & Rowland, P.C., 2227 S. State Route 157, Edwardsville, IL 62025