**In re Edward SIGNORE and Kanella Signore, Debtors.**

**James Kafantaris, Plaintiff,**

v.

**Kanella Signore, Defendant.**

**Bankruptcy No. 09 B 013534. Adversary No. 09 A 00667.**

United States Bankruptcy Court, N.D. Illinois, Eastern Division.

Sept. 17, 2010.

Julia D. Mannix, for Plaintiff.

Jonathan D. Parker, for Defendant.

## ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
### (Dkt. No. 26)

JACQUELINE P. COX, Bankruptcy Judge.

Defendant Kanella Signore (the "Defendant") asks that this court grant summary judgment in her favor. She argues that she does not owe plaintiff James Kafantaris (the "Plaintiff") a fiduciary duty, precluding his claim under section 523(a)(4); that the Plaintiff cannot prevail on his section 523(a)(6) claim because he cannot show a willful and malicious injury; and that the Plaintiff's section 523(a)(2)(A) claim cannot succeed as the debt in issue did not arise as a result of false pretenses, a false representation, or actual fraud. The Defendant's Motion for Summary Judgment is GRANTED.

### JURISDICTION

The court has subject matter jurisdiction over this case pursuant to 28 U.S.C. §§ 1334(a) and 157(a), as well as the District Court's Internal Operating Procedure 15(a). This is a core proceeding over which the court has authority to enter a final judgment. 28 U.S.C. § 157(b)(2)(I).

### APPLICABLE STANDARD

Pursuant to Federal Rule of Civil Procedure 56, applicable to adversary proceedings by Federal Rule of Bankruptcy Procedure 7056, summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c)(2).

### FACTS

The Adversary Complaint herein alleges in three counts that the Defendant should be denied a discharge as to the debt she owes to the Plaintiff.

The Plaintiff and the Defendant are brother and sister. Their parents were William ("William") and Jean ("Jean") Kafantaris who are now deceased. The Plaintiff is married to Linda Kafantaris ("Linda"). The Defendant is married to Edward Signore ("Edward"). William and Jean owned and operated a restaurant called Billy's Fountain and Grill until they sold it to the Plaintiff in 1975. The Plaintiff and his wife Linda still operate Billy's Fountain and Grill. William purchased a condominium for the Defendant and her former spouse. According to the Defendant, her current spouse Edward repaid William for the condominium.

William died intestate. Upon his death, his assets passed to Jean.

On November 14, 2003, Jean executed a power of attorney for finances. She chose the Defendant as her agent. The Defendant's daughter, Elaine Schima ("Elaine"), was named as successor agent. During 2003, Jean met with John "Jack" Flood ("Flood"), who advised her as to ways to limit her taxes on income from various investments.

On November 19, 2003, $9,736.63 was withdrawn from account 8052271902 at Charter One Bank. Present were the Defendant, Jean, and Elaine. Jean, the Plaintiff, and the Defendant had been joint tenants on that account. The Plaintiff was not present when the account was opened and never contributed to it or withdrew funds from it.

On November 19, 2003, Jean closed Charter One Bank account 8865187115. Present were the Defendant, Jean, and Elaine.

On November 19, 2003, $86,531.77 was withdrawn from account 8053155958 at Charter One Bank. According to the De-

fendant, she assisted Jean in signing the withdrawal slip. Present at the execution of this transaction were the Defendant, Jean, and Elaine.

On November 19, 2003, Charter One Bank issued official check number 14593465 in the amount of $197,685.13.

On November 19, 2003, four withdrawals were made from account 2864057952 held at TCF Bank. The first three withdrawals were for official checks of $10,000.00 each. The Plaintiff, the Defendant, and Elaine each received one of the checks. Present at the execution of the above transaction were the Defendant, Jean, and Elaine.

On November 19, 2003, account number 387935152 was opened at TCF Bank. The Defendant, the Plaintiff, and Elaine were joint tenants of this account. Present at the execution of this transaction were the Defendant, Jean, and Elaine.

On November 25, 2003, the Defendant opened account 200266807 at Mid America Bank. It was funded by two deposits: a $100,000.00 deposit drawn on account 387935152 held at TCF Bank on November 23, 2003 and an $80,000.00 deposit drawn on the same account on December 1, 2003. The Plaintiff was added as an account holder effective December 1, 2003. The Plaintiff signed the document to add himself as an account holder.

On November 30, 2003, Jean opened a brokerage account at Scudder Investments. This account was funded by two deposits: a $10,000.00 deposit drawn against account 3875935152 at TCF Bank on November 20, 2003 and a $35,000.00 deposit drawn against the same account on January 4, 2004. This brokerage account was held jointly by Jean and Elaine.

On November 30, 2003, Jean opened a brokerage account at Franklin Templeton. That account was funded by two deposits: a $10,000.00 deposit drawn against account 3875935152 held at TCF Bank on November 30, 2003 and a $35,000.00 deposit drawn against the same account on December 15, 2003. The account was held jointly by Jean and the Defendant.

It was asserted by both the Plaintiff and the Defendant that it was common for Jean to open and close accounts to take advantage of favorable interest rates or "other perks."

Attorney William Maraldo drafted a will for Jean after she moved in with the Defendant. The will specifically disinherited the Plaintiff. In the will, Jean forgave the Plaintiff the debt he owed to her for the purchase of Billy's Fountain and Grill. Despite being disinherited, the Plaintiff received $35,000.00 from the Mid America Bank account 200266807 at Jean's funeral.

The Plaintiff never discussed Jean's "estate plan" with her and did not know the nature or extent of her assets.

## ANALYSIS

The Plaintiff reminds the court that on a motion for summary judgment it must view the evidence in the light most favorable to him. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

In arguing against the imposition of summary judgment against him, the Plaintiff posits that the facts support his position. Jean gave the Defendant a power of attorney over her finances on November 14, 2003, when she was living with the Defendant and was in such poor health, having been diagnosed with dementia, that she needed a full-time caregiver. The Plaintiff wants the court to believe, without more, that these circumstances made the Defendant Jean's fiduciary.

The Plaintiff argues further that under Illinois law a power of attorney creates a fiduciary relationship as a matter of law

and that any transactions that benefit the person holding the power of attorney are therefore presumptively fraudulent. The Defendant responds that under federal law-the law applicable to this case—a power of attorney alone does not create a fiduciary relationship.

### Existence of a Fiduciary Relationship

The Plaintiff cites case law from courts that found fiduciary relationships to exist where the debtor held the creditor's power of attorney. In *Eveland v. Kishbaugh (In re Kishbaugh)*, 399 B.R. 419 (Bankr. M.D.Pa.2009), a chapter 7 debtor held a durable power of attorney to deal with the creditor's assets based on the creditor's ill health prior to undergoing surgery for cancer. *Id.* at 423–24. The court found that the power of attorney was sufficient to state a claim to except a debt from discharge based on a pre-existing fiduciary relationship. *Id.* at 426. The debtor in *Kishbaugh* was found to be a fiduciary under circumstances different from those herein. The *Kishbaugh* court noted: "In regards to this Count, Eveland has pled the existence of a fiduciary duty through the granting of the power of attorney to Ms. Kishbaugh and the entrusting of money to be used for Eveland's benefit. The entrustment of money or property pursuant to an executed power of attorney creates the fiduciary relationship necessary for an action under § 523(a)(4)." *Id.* Neither Jean nor the Plaintiff entrusted money to the Defendant to be used for Jean's benefit or for the benefit of the Plaintiff. According to the Defendant, Jean merely needed help making banking transactions.

The Plaintiff also relies on *Pennsylvania Lawyers Fund for Client Security v. Baillie (In re Baillie)*, 368 B.R. 458 (Bankr.W.D.Pa.2007). That court noted that under Pennsylvania law an agent who acts pursuant to a power of attorney has a fiduciary relationship with the principal.

*Id.* at 470. The court noted that "[w]ithout something more, however, this does not establish that debtor acted as a fiduciary with respect to [the principal] for purposes of § 523(a)(4). [The principal] also must have *entrusted* the money or property at issue here to debtor." *Id.* (emphasis in original). The Plaintiff in this case has not established that the Defendant was entrusted with property. In any event, the Plaintiff may not have standing to challenge the Defendant if the Defendant is found to be Jean's fiduciary. The Plaintiff is a third party who does not claim to be a representative of Jean's probate estate, and this action has not been joined by a representative of Jean's estate. The court finds that the Plaintiff has not established that the Defendant acted as a fiduciary to Jean or that her actions altered the intended result of Jean's will.

The Plaintiff additionally relies on *Pioneer Bank & Trust v. Cameron*, Nos. 08–5007, 08–50005, 2008 WL 5169513 (Bankr. D.S.D.2008). However, that court noted that "[a]s a rule, the general fiduciary duty created by a power of attorney gives rise to an agency relationship, but does not give rise to the fiduciary capacity required by section 523(a)(4)." *Id.* at *4 (*quoting Bast v. Johnson (In re Johnson)*, 174 B.R. 537, 541 (Bankr.W.D.Mo.1994)). This case does not help the Plaintiff.

In *State of Illinois v. Marchiando (In re Marchiando)*, 142 B.R. 246 (N.D.Ill.1992), the district court held that "[t]he concept of a fiduciary is a matter of federal law. . . . The general meaning—a relationship involving confidence, trust and good faith—is far too broad. The fiduciary relation referred to in § 523(a)(4) has been held to be limited to express and technical trusts, neither of which the law implies from a contract[.] Further, it must have existed prior to the act creating the debt and without reference to that

act." *Id.* at 249 (internal citations omitted). "Under Illinois law, an express trust exists where there is (1) intent to create a trust; (2) definite subject matter or trust property; (3) ascertainable beneficiaries; (4) a trustee; (5) specifications of a trust purpose and (6) delivery of trust property to the trustee." *Id.* at 249–50. The Plaintiff has presented no evidence of an intent on Jean's part to create a trust. There is neither a trust subject matter nor trust property. There are no ascertainable beneficiaries, and there is no trustee. There are no specifications of a trust purpose, nor has there been delivery of trust property to a trustee.

In *In re Marchiando*, 13 F.3d 1111 (7th Cir.1994), the Seventh Circuit affirmed the district court and harmonized the case law by examining cases in which a trust had an existence independent of the debtor's wrong and those in which a trust had no existence before the wrong was committed. The court noted that a "lawyer's fiduciary duty to his client, or a director's duty to his corporation's shareholders, pre-exists any breach of that duty, while in the case of a constructive or resulting trust there is no fiduciary duty until a wrong is committed." *Id.* at 1115–16. The court emphasized the entrustment factor: "Such arrangements, held not to come within the scope of section 523(a)(4) . . ., are remote from the conventional trust or fiduciary setting, in which someone-a lawyer for example, or a guardian, or a managing partner-in whom confidence is reposed is entrusted with another person's money for safekeeping." *Id.* at 1116.

 The purpose of a discharge in bankruptcy is to give the debtor a fresh start. *Vill. of San Jose v. McWilliams*, 284 F.3d 785, 790 (7th Cir.2002). The party seeking to establish an exception to discharge bears the burden of proof. *See Goldberg Secs., Inc. v. Scarlata (In re Scarlata)*, 979 F.2d 521, 524 (7th Cir.1992). That burden of proof is a preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 291, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991). Exceptions to discharge are to be construed strictly against the creditor and liberally in favor of the debtor. *Estate of Smith v. Marcet (In re Marcet)*, 352 B.R. 462, 468 (Bankr.N.D.Ill.2006). Section 523(a) is to be narrowly construed so as not to undermine the Bankruptcy Code's purpose of giving the honest but unfortunate debtor a fresh start. *Park Nat'l Bank & Trust of Chi. v. Paul (In re Paul)*, 266 B.R. 686, 693 (Bankr.N.D.Ill.2001).

## Count I

 The Plaintiff alleges in Count I that the debt owed to him by the Defendant should not be discharged under section 523(a)(4), which excepts from discharge debts "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny[.]" 11 U.S.C. § 523(a)(4). The meaning of these terms is a question of federal law. To recover, the Plaintiff must prove that the Defendant committed: (1) fraud or defalcation while acting as a fiduciary; (2) embezzlement; or (3) larceny. Defalcation is defined as misappropriation of trust funds held in a fiduciary capacity and the failure to account for such funds. *Vozella v. Basel–Johnson (In re Basel–Johnson)*, 366 B.R. 831, 847 (Bankr.N.D.Ill.2007). The Plaintiff alleges that the Defendant breached her fiduciary duty to Jean by transferring monies to accounts from which the Defendant benefitted. Generally, the law presumes a breach of fiduciary duty when a fiduciary profits by his or her acts regarding the trust relationship. *Hollingshead v. A.G. Edwards & Sons, Inc.*, 396 Ill.App.3d 1095, 1103–04, 336 Ill. Dec. 664, 920 N.E.2d 1254 (5th Dist.2009) (*quoting White v. Raines*, 215 Ill.App.3d

49, 59, 158 Ill.Dec. 478, 574 N.E.2d 272 (5th Dist.1991)).

The Plaintiff urges the court to find that the execution of the power of attorney to the Defendant on November 14, 2003 created a fiduciary relationship as between Jean and the Defendant. Illinois law provides that the power of attorney relationship creates a fiduciary relationship. *Hollingshead*, 396 Ill.App.3d at 1103–04, 336 Ill.Dec. 664, 920 N.E.2d 1254; *White*, 215 Ill.App.3d at 59, 158 Ill.Dec. 478, 574 N.E.2d 272. In analyzing a section 523(a)(4) action, however, courts apply federal law regarding the existence of a fiduciary relationship. *Pearson v. Howard, (In re Howard)*, 339 B.R. 913, 919 (Bankr.N.D.Ill.2006). More is needed to find such a relationship under federal law. The issue is whether fiduciary responsibilities will lie only in the case of express trusts; the Plaintiff does not allege that an express trust exists.

The Seventh Circuit has ruled that a fiduciary relationship can arise separately from an express trust, as it is the character of the debt relationship that determines whether a fiduciary relationship exists. *Marchiando*, 13 F.3d at 1116. Specifically, the Seventh Circuit has held that a fiduciary relationship may arise either from an express trust or when there is a difference in knowledge or power between the fiduciary and the principal which gives the former a position of ascendancy over the latter. *Id.* In *In re Woldman*, 92 F.3d 546 (7th Cir.1996), the Seventh Circuit noted that only a subset of fiduciary obligations is encompassed by the word "fiduciary" in section 523(a)(4). *Id.* at 547.

The court notes that the Plaintiff has not asserted or established in opposition to the motion for summary judgment that Jean was too sick to handle the transactions in issue. Such evidence could help the Plaintiff show that the Defendant had power over Jean sufficient to meet the Seventh Circuit's ruling that a fiduciary relationship exists for section 523(a)(4) purposes if there is a difference in knowledge or power between the fiduciary and the principal, giving the former a position of ascendancy over the latter.

The Plaintiff has also failed to assert in either his Complaint or a Local Rule ("LR") 7056–2 Statement that the Defendant was entrusted with funds or that the Defendant misappropriated funds held in trust and failed to account for such funds. The Defendant accompanied Jean to banks and various financial institutions where withdrawals were made and new accounts were created. Jean made several changes regarding which of her relatives would co-own those accounts, apparently as part of an estate plan. The Plaintiff complains that his status as a co-owner on some of those accounts was changed improperly by the Defendant. The Plaintiff does not establish, however, that he had a right to co-owner status. Nor does the Plaintiff establish that there was a contract between him and Jean to bequeath property or money to him. At one time, Jean designated the Plaintiff as a surviving co-owner; at other times, she did not. There is no evidence that the Defendant did anything untoward to get Jean to make or change those designations.

On the date of this Order, the court entered a separate Order on the Defendant's Motion to Strike Plaintiff's LR 7056–2 Statement and to Deem Admitted all Facts Contained in Defendant's Local Rule 7056–1A Statement. In that Order, several facts were deemed admitted. Admitted is the fact that Jean met with Flood who advised her as to how to obtain more favorable tax treatment for her investments. After those meetings, Jean decid-

ed to withdraw her money from her then-existing bank accounts and re-invest the funds in accounts with more favorable tax treatment. Also admitted is the fact that the Defendant was not present at any of those meetings with Flood. Additionally, the facts that the Plaintiff was not present when the accounts on which he had been a joint tenant were opened and that he and his wife did not contribute funds to those account are admitted. Those facts are set out in the Defendant's LR 7056–1 Statement; the Plaintiff specifically admitted those facts in paragraphs 28 through 31 of his response. The court deemed similar facts in paragraph 32 admitted; the Plaintiff admitted them before improperly injecting additional facts into his response.

Also admitted were other facts noted in the Defendant's LR 7056–1 Statement regarding other transactions creating various accounts. Specifically the Plaintiff is deemed to have admitted paragraphs 33 through 36 which focused on many of Jean's financial transactions. Paragraph 39 states that the Plaintiff was made a joint tenant on one of the new accounts. The Plaintiff admitted the facts in that paragraph in part and said that he could not admit or deny the remainder of the statement. The court deemed the entire paragraph admitted as the Plaintiff injected additional facts into the response when that additional material should have been the subject of a separate statement. The facts additionally show that the Plaintiff received a $10,000.00 check from one of the accounts (that fact, noted at paragraph 38 of the Defendant's LR 7056–1 Statement, was deemed admitted) and $35,000.00 at Jean's funeral (that fact, noted at paragraph 46 of the Defendant's 7056–1 Statement, was also deemed admitted).

At paragraph 31 of his Complaint, the Plaintiff asserts that the Defendant committed fraud or defalcation by transferring funds out of accounts held in the Plaintiff's name into accounts held in her name. There is no evidence of record that the Defendant was the one who made the transfers in issue. The Plaintiff has not submitted affidavits, depositions, or a statement of facts under LR 7056–2 asserting facts that show that anyone other than Jean made the transfers. In addition, there is no evidence that the Defendant owed the Plaintiff a fiduciary duty with respect to the funds in Jean's account. The court notes that the Plaintiff admitted paragraph 43 of the Defendant's LR 7056–1 Statement which indicates that it was common for Jean to open and close various financial accounts to take advantage of favorable interest rates or other perks. In addition to admitting the statements in paragraph 43, the Plaintiff affirmatively stated that Jean would not close an account if doing so would cause her to lose any interest. (The court struck this additional statement because it should been asserted in a separate statement.)

The court also notes that it is undisputed that Jean's will disinherited the Plaintiff. Paragraph 46 of the Defendant's LR 7056–1 Statement asserts that Jean's will "specifically disinherited" the Plaintiff, that the will forgave the debt that the Plaintiff owed for the purchase of Billy's Fountain and Grill restaurant, and that the Plaintiff received $35,000.00 at Jean's funeral. The Plaintiff admitted the statements in paragraph 46 and additionally stated: (1) that the promissory note for the restaurant was retired in 2002, long before the will was drafted, and (2) that the Plaintiff was named executor of the will for Jean. (The Plaintiff's additional statements were stricken as improper because they were not included in a separate statement.)

The court also notes that there is no evidence that the Defendant actually exercised the power of attorney to execute any of the transactions in issue.

The court enters summary judgment in favor of the Defendant on Count I.

## Count II

Count II alleges that the debt owing to the Plaintiff should not be discharged under section 523(a)(6), which denies a discharge "for willful and malicious injury by the debtor to another entity or to the property of another entity." 11 U.S.C. § 523(a)(6).

The Plaintiff has failed to establish either through affidavits, depositions, or a LR 7056–2 Statement that the Defendant acted willfully and maliciously toward him or Jean. The Defendant admitted that she physically assisted Jean on November 19, 2003 in signing a withdrawal slip for a transaction. However, there is no evidence that that transaction or any of the others were carried out against Jean's will or by a person other than Jean. Jean's will specifically disinheriting the Plaintiff weighs heavily against the Plaintiff's assertion that the Defendant caused him injury in a willful and malicious manner. At certain times, Jean designated the Plaintiff as a joint tenant; at other times, she named others as joint tenants on her accounts. The Plaintiff does not challenge Jean's actions in this regard.

The court enters summary judgment in favor of the Defendant on Count II.

## Count III

Count III alleges that the debt owing to the Plaintiff should not be discharged under section 523(a)(2)(A), which excepts from discharge debts incurred under "false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition." 11 U.S.C. § 523(a)(2)(A).

In order to recover under the false pretenses or false representation prong of section 523(a)(2)(A), a creditor must establish that: (1) the debtor made a false representation; (2) which the debtor (a) either knew to be false or made with reckless disregard for its truth and (b) made with an intent to deceive; and (3) the creditor justifiably relied on the false representation. *Ojeda v. Goldberg*, 599 F.3d 712, 716–17 (7th Cir.2010). The Plaintiff has not shown that the debt owing to him was based on false pretenses or a false representation. He has not attributed a false statement to the Defendant in either an affidavit, a deposition, or a LR 7056–2 Statement.

Actual fraud, by definition, consists of " 'any deceit, artifice, trick, or design involving direct and active operation of the mind, used to circumvent and cheat another[.]' " *McClellan v. Cantrell*, 217 F.3d 890, 893 (7th Cir.2000). The concealment of material facts by a fiduciary may support a request to not discharge a debt. *See Haddad v. Haddad (In re Haddad)*, 21 B.R. 421, 423–24 (9th Cir. BAP 1982). The Plaintiff has not established facts in either his Complaint or a LR 7056–2 Statement that the Defendant acted with intent to cheat or deceive him. Further, having failed to show that the Defendant owes him a fiduciary duty, the Plaintiff cannot establish that the Defendant had a duty to inform him of Jean's transactions and that she failed to do so.

The Plaintiff alleges generally, without recitation to specific facts, that the Defendant obtained money through false pretenses, false representations, and/or fraud and that, as a direct result, the Plaintiff has been damaged. Specifically, the Plaintiff contends that the funds previously in accounts in his name were transferred into

accounts in the Defendant's name and that he lost interest on those accounts.

The Plaintiff has not argued or asserted facts pursuant to LR 7056–2 that show that he had an interest in property that the Defendant had to maintain. Nor has he established that he had an interest in property that Jean had to maintain or that the transactions in issue were made contrary to Jean's wishes.

At this stage of the litigation, the Plaintiff is required to point to evidence in the record tending to support his case. The Defendant is entitled to summary judgment as a matter of law because the Plaintiff has failed to make a sufficient showing of the elements of his case with respect to which he has the burden of proof. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). His failure to do so condemns his case.

The court enters summary judgment in favor of the Defendant on Count III.

## CONCLUSION

The Plaintiff has failed to establish that a debt owed to him by the Defendant is excepted from discharge under section 523(a)(2)(A), (a)(4), or (a)(6). Accordingly, the court finds that the Defendant's debt to the Plaintiff is dischargeable. Judgment is entered in favor of the Defendant Kanella Signore and against the Plaintiff James Kafantaris as to Counts I, II, and III of the Adversary Complaint herein.

The October 6, 2010 and October 7, 2010 trial dates are, therefore, stricken.