NOTICE

Decision filed 01/22/16. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2016 IL App (5th) 140380

NO. 5-14-0380

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_____

| | | |
|---|---|---|
| FRANKLIN STURGILL, Individually and on Behalf of All Others Similarly Situated, | ) ) ) | Appeal from the Circuit Court of St. Clair County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 13-L-435 |
| SANTANDER CONSUMER USA, INC., | ) ) | Honorable Andrew J. Gleeson, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE CATES delivered the judgment of the court, with opinion.
Presiding Justice Schwarm and Justice Moore[*] concurred in the judgment and opinion.

**OPINION**

¶ 1    The defendant, Santander Consumer USA, Inc. (Santander), appeals from the order denying its renewed motion to compel individual arbitration and to dismiss or stay the proceedings in the circuit court. For the reasons that follow, we reverse and remand for further proceedings.

_____

[*]Justice Spomer was originally assigned to this case. Justice Moore was assigned to this case upon Justice Spomer's retirement. Justice Moore has read the briefs and listened to the tape of oral argument.

1

¶ 2    On May 12, 2006, the plaintiff, Franklin Sturgill, executed a retail sales installment contract with Tri Ford Mercury, Inc., an automobile dealer, to buy a Ford F-150 pickup truck.  The finance company named in the installment contract was Triad Financial Corporation (Triad).  The installment contract also contained the financing terms of the purchase.  According to the single-page installment contract, Sturgill financed $19,037.  He agreed to make payments of $433.65 per month for a period of 72 months, at an interest rate of 17.95%.  The first payment was due on June 11, 2006, and the contract ran through June 2012.  The installment contract made no mention of arbitration.

¶ 3    On that same day, Tri Ford Mercury, Inc., executed an assignment of all of its rights, title, and interest in Sturgill's "purchase of a motor vehicle dated 5-12-06" to Triad.  The assignment document provided that Triad could further assign the rights and interests which it had been assigned by Tri Ford Mercury, Inc.  Sturgill began making monthly payments to Triad in accordance with the terms set forth in the installment contract.

¶ 4    On June 19, 2009, Sturgill executed a "Modification and Extension Agreement" (Extension Agreement) with Triad.  Under the Extension Agreement, Triad agreed to extend the payments that were past due on Sturgill's retail installment contract.  Sturgill was allowed to pay his past due installments from May 2009 and June 2009 at the end of the contract period.  Thus, Sturgill was scheduled to make his final payment on August 16, 2012 (as opposed to June 2012).  In consideration for Triad's forbearance, Sturgill agreed to release Triad, its affiliates, employees, agents, successors, and assigns from any

and all claims that may have accrued under the installment contract from the date of its execution through the date of execution of the Extension Agreement. Contained within the Extension Agreement was an arbitration clause. The arbitration clause was simply inserted within the Extension Agreement, among the other terms and conditions of the contract. There was no bold lettering or change in font that would draw a buyer's attention to the arbitration clause.

¶ 5 The arbitration clause in the Extension Agreement was drafted by Triad and provided, in part:

"ARBITRATION. As additional consideration for Triad's agreement to forbear from exercising its remedies under the Contract, you and Triad agree that upon written request by either party that is submitted according to the rules for arbitration, any Claim, except those specified below, shall be resolved by binding arbitration in accordance with (i) the Federal Arbitration Act, (ii) the Rules of the chosen Administrator, and (iii) this Arbitration Provision.

(a) Claims Covered. 'Claim' means any claim, dispute, or controversy now or hereafter existing between you and Triad, including without limitation, any claims arising out of, in connection with, or relating to the Contract, and any modification, extension, application, or inquiry or credit or forbearance of payment; any trade-in of a vehicle; any products, goods and/or services, including the installation thereof, purchased in connection with this Contract; any insurance, service contract, extended warranty, auto club membership or debt cancellation agreement purchased in connection with the Contract; the closing, servicing,

3

collecting or enforcing of the Contract; whether the claim or dispute must be arbitrated; the validity of this Agreement; any negotiations between you and Triad; any claim or dispute based on an allegation of fraud or misrepresentation, including without limitation, fraud in the inducement of this or any other agreement; and any claim or dispute based on state or federal law, or an alleged tort. You and Triad also agree to submit to final binding arbitration any claim or dispute that you or Triad has against all persons and/or entities (i) who are involved with the Contract, (ii) who signed or executed any document relating to the Contract or any Claim, and (iii) who may be jointly or severally liable to either you or Triad regarding any Claim."

¶ 6 The arbitration clause also provided that class actions and joinder of parties were prohibited. As noted above, any claim was to be resolved "in accordance with the Federal Arbitration Act, the Rules of the chosen Administrator, and this Arbitration Provision." The arbitration clause expressly excluded from arbitration "[a]ny Claim where all parties collectively (including multiple named parties) seek, in the aggregate, $15,000 or less in total monetary relief," including costs and attorney fees, and any claim filed in small claims court. There was nothing in the Extension Agreement, or its arbitration clause, that permitted the signatory parties to transfer or assign their respective arbitration rights. The Extension Agreement did not bear the signature of any representative from Triad.

¶ 7 On September 18, 2009, Santander entered into an "Interest Purchase Agreement" with Triad Financial Holdings LLC and its subsidiary, Triad. The Interest Purchase

4

Agreement stated that Triad Financial Holdings LLC and Triad were in the business of servicing consumer retail installment contracts and loans for motor vehicles. According to the terms of the Interest Purchase Agreement, at an unspecified closing date, Triad Financial Holdings LLC and Triad intended to "sell, assign, transfer, convey, and deliver" their "Membership Interests," subject to the terms and conditions set forth in the agreement, to Santander. The "Membership Interests," defined in section 3.03 of the agreement, referred to the number of "units" being sold. These units represented the value of the LLC being purchased and did not identify any retail installment contracts. The Interest Purchase Agreement tendered to the court did not include a list of the specific accounts being acquired. The Interest Purchase Agreement did not contain an arbitration clause. Sturgill was not a signatory to this Interest Purchase Agreement and had nothing to do with the transfer of the interests set forth in that agreement. Nevertheless, some time after the Interest Purchase Agreement was executed, Sturgill began making his installment payments to Santander.

¶ 8    On June 10, 2013, Sturgill and Santander allegedly reached an agreement to settle Sturgill's installment contract for less than the amount originally owed pursuant to that agreement. Sturgill produced a letter, dated June 13, 2013, acknowledging the settlement agreement. The letter was from Santander's loss recovery department. It was titled "Settled in Full Letter" and was addressed to Franklin Sturgill. It stated that "the charged off account was settled in full for less than the amount owed on 6/10/2013" and that Santander "recognizes that the above-mentioned debt has been satisfactorily settled in full." The letter referenced the account number, as well as the make, model, and VIN

number of Sturgill's truck. Below the signature space, it was also noted that this document was a "Confidential and Proprietary Settled in Full Letter/Version 1.0 (09.05.2012)" of Santander Consumer USA, Inc.

¶ 9 Sturgill also produced an email that he had received from Santander. Santander's logo and the phrase "Vehicle Payoff Confirmation" appeared as a banner atop the email. The title "Vehicle Payoff Confirmation and Title Advisory" appeared below the banner. The email stated: "Dear FRANKLIN STURGILL, Please be advised that the outstanding balance on your retail installment contract with Santander Consumer USA was paid in full as of 6/10/2013, in the amount of $860.03." The email further stated that the title would be released on June 24, 2013, and that because mailing times vary, the recipient should allow 7 to 10 business days after the release date for the title to arrive in the mail. Sturgill did not receive his vehicle title within the time period set forth in the email. Sturgill sent a letter to Santander dated July 24, 2013, requesting the release of his title. Santander did not release the vehicle title, and there is no indication that it responded to Sturgill's letter. There is nothing in the record to indicate that Santander attempted to disclaim the settlement after receiving Sturgill's letter and prior to this litigation. Similarly, there is nothing in the record to indicate that Santander, at any point prior to this litigation, reversed its decision or rescinded the "Settled in Full Letter" or "Vehicle Payoff Confirmation" email.

¶ 10 On August 23, 2013, Sturgill filed a one-count putative class action complaint against Santander in the circuit court of St. Clair County and alleged that Santander violated section 3-205 of the Illinois Vehicle Code (625 ILCS 5/3-205 (West 2010)) by

failing to deliver the certificate of title to his vehicle within 21 days after the lien was satisfied. Sturgill sought a statutory award of $150 for himself and each class member, plus attorney fees and costs. At the time he filed his complaint, he also filed a motion for class certification.

¶ 11 On October 15, 2013, Santander filed a motion to compel individual arbitration and to dismiss or stay the judicial proceedings. Santander argued that Sturgill and Triad had agreed to arbitrate on an individual basis "any claim, dispute, or controversy *** arising out of, or in connection with, or relating to the Contract"; that it had acquired Triad's interests in vehicle installment contracts, including Sturgill's installment contract and Extension Agreement; and that as Triad's successor in interest, it was entitled to compel arbitration of Sturgill's claim under the terms of the Extension Agreement. In support of its arguments, Santander attached the original installment contract, the Extension Agreement, and a declaration from Santander's vice president of servicing, Wayne Nightengale. In the declaration, Nightengale stated that as part of the Interest Purchase Agreement between Triad and Santander, Santander acquired all of Triad's rights and liabilities with respect to Triad's vehicle loans, and that as a result of the acquisition, Santander became Triad's successor in interest to Sturgill's installment contract and the Extension Agreement.

¶ 12 Sturgill filed an objection to Santander's motion to compel arbitration and attached the "Settled in Full Letter," the "Vehicle Payoff Confirmation" email, and his letter requesting his title. Sturgill pointed out that he and Triad were the only parties to the Extension Agreement and that Santander failed to produce any documents in support of

7

its contention that it was the successor in interest to Triad's right to enforce the provisions of Sturgill's installment contract and/or Extension Agreement. In addition, Sturgill argued that his cause of action arose after the settlement of the installment contract and Extension Agreement. Sturgill maintained that even if Santander could prove it had some right to enforce the arbitration clause in the Extension Agreement, that contract was over and settled. Therefore, any claim for arbitration was moot.

¶ 13 A hearing was held before the trial court on December 10, 2013. During this hearing, the court agreed that the central issue was whether there was an enforceable arbitration clause that existed between the parties. The court identified multiple questions of fact and law arising from Santander's motion that required resolution before it could rule on the motion to compel arbitration or to stay or dismiss the proceedings. Because of the various factual and legal questions regarding what interests Santander had acquired as a result of the Interest Purchase Agreement with Triad, and whether there existed a valid and enforceable arbitration clause, the court indicated that more proof was required before it could rule on Santander's motion. The court further indicated that Santander's motion to compel arbitration could be raised again after the parties had engaged in some additional discovery. The court denied Santander's motion to compel arbitration without prejudice. The court also granted Santander leave to file the Interest Purchase Agreement under seal.

¶ 14 On January 10, 2014, Santander filed a renewed motion to compel individual arbitration and to stay or dismiss the judicial proceedings. Santander filed, under seal, the Interest Purchase Agreement between Santander and Triad. Santander also filed an

amended declaration by Wayne Nightengale, with exhibits attached, including Sturgill's original installment contract, the Extension Agreement, and a spreadsheet showing Santander's electronic record of Sturgill's payment history.

¶ 15    In paragraph 8 of his declaration, Nightengale stated:

"Pursuant to the Interest Purchase Agreement, Santander purchased all of the issued and outstanding equity interests in Triad, which the agreement defines as 'Membership Interests.'  See Interest Purchase Agreement ¶  3.03.  As a result of the Interest Purchase Agreement, Santander acquired all of Triad's rights and liabilities associated with its outstanding automobile loans, including the specific Triad loan agreements executed by Plaintiff attached as Exhibits A, B, and C, and Triad's associated arbitration rights with respect to Plaintiff."

Nightengale's declaration also stated that when Santander concluded the agreement to purchase Triad's interests, Santander compiled a list of all customer loan accounts that had been acquired as a result of the purchase.  Nightengale attached an excerpt from Santander's customer list showing that the loan account number on Sturgill's Extension Agreement (A7460884) was similar to the loan account number in Santander's system (40000174608840001).  Nightengale further indicated that Santander held the title to Sturgill's vehicle and that Santander had been receiving Sturgill's monthly loan payments.

¶ 16    The Nightengale declaration also stated that between May 31, 2013, and June 12, 2013, Sturgill "purported to make three electronic payments to Santander to pay off the outstanding loan balance for his Ford F-150 vehicle," and that all three payments were returned for insufficient funds.  A spreadsheet was attached in support of these assertions.

9

Nightengale explained that the spreadsheet showed that the first two returns for insufficient funds were posted on June 12, 2013, and that the third was posted on June 24, 2013. Nightengale acknowledged that Sturgill had produced an unsigned "Settled in Full Letter" and a "Vehicle Payoff Confirmation" email, which Sturgill claimed he received from Santander. Nightengale indicated that Santander had no internal record of sending the letter to Sturgill and expressed doubt about whether Santander had actually issued the "Settled in Full Letter" to Sturgill, although he offered no explanation for how Sturgill could have obtained such a letter. Nightengale then provided his personal view, asserting: "It is apparent that Plaintiff is trying to take advantage of the situation by using the 'Settled in Full' letter and 'Vehicle Payoff Confirmation' email to claim that his loan debt was forgiven when he knows full well that any such letter and email–if they were issued–were based either on his own knowing misrepresentation to Santander or Santander's mistaken belief that Plaintiff's payments had cleared the bank."

¶ 17    On February 7, 2014, Sturgill filed an objection to Santander's renewed motion to compel arbitration. Sturgill argued that he never agreed to arbitrate any dispute with Santander and that there was no valid arbitration agreement in any contract with Santander. Sturgill argued that he and Santander had entered into a settlement for the purchase of his Ford F-150 vehicle, that Santander had agreed to settle the loan for less than the amount owed, and that the settlement agreement was memorialized in the "Settled in Full Letter" and the "Vehicle Payoff Confirmation" email. He claimed that his statutory cause of action could accrue only after the contract was fully performed and that

10

his cause of action was outside the scope of the Extension Agreement that contained the arbitration clause.

¶ 18   On February 11, 2014, a nonevidentiary hearing was held on Santander's renewed motion to compel arbitration and to stay or dismiss judicial proceedings.  There is no indication that the parties had engaged in any additional discovery since the December 10, 2013, hearing.  Sturgill had filed a motion for leave to amend his complaint, which was allowed by the court, and an amended complaint was filed *instanter*.  The parties proceeded, by agreement, on Santander's motion as it applied to the amended complaint. The record reveals that the court was presented with the same factual questions and legal arguments that had been presented during the prior hearing just two months earlier.  The only difference was that Santander had filed an amended declaration from Nightengale in an effort to provide the court with additional information regarding the Interest Purchase Agreement between Santander and Triad.  It is clear from the record that the court remained concerned about the legal and factual ramifications of the Interest Purchase Agreement, the arbitration clause and its survivability in light of the Interest Purchase Agreement, and the application of contractual terms to a statutory cause of action, among other issues.  After hearing the arguments, the court took the matter under submission.

¶ 19   On July 11, 2014, the court issued the following order: "After reviewing parties memoranda and having heard argument on Defendant's Motion, the Court finds as follows: Defendant's renewed Motion to Compel Individual Arbitration and to Stay or Dismiss Proceedings is hereby denied."  Santander appealed.

11

¶ 20    An order granting or denying a motion to compel arbitration is injunctive in nature and is appealable under Illinois Supreme Court Rule 307(a)(1) (eff. Feb. 26, 2010). *Salsitz v. Kreiss*, 198 Ill. 2d 1, 11, 761 N.E.2d 724, 730 (2001); *Hollingshead v. A.G. Edwards & Sons, Inc.*, 396 Ill. App. 3d 1095, 1098-99, 920 N.E.2d 1254, 1257 (2009). In an appeal pursuant to Rule 307(a)(1), the only issue is whether there was a sufficient showing to sustain the trial court's order granting or denying the relief sought. *Hollingshead*, 396 Ill. App. 3d at 1099, 920 N.E.2d at 1257; *Travis v. American Manufacturers Mutual Insurance Co.*, 335 Ill. App. 3d 1171, 1174, 782 N.E.2d 322, 325 (2002).   In an appeal from the denial of a motion to compel arbitration without an evidentiary hearing, our review is *de novo*.  *Hollingshead*, 396 Ill. App. 3d at 1099, 920 N.E.2d at 1258.

¶ 21    A motion to compel arbitration and to dismiss or stay judicial proceedings is similar to a motion to dismiss under section 2-619(a)(9) of the Code of Civil Procedure (735 ILCS 5/2-619(a)(9) (West 2010)).  *Travis*, 335 Ill. App. 3d at 1174, 782 N.E.2d at 325.   Section 2-619(a)(9) allows for a dismissal where the claim is barred by an affirmative matter that avoids the legal effect of or defeats the claim.  735 ILCS 5/2-619(a)(9) (West 2010).   Section 2-619(a)(9) provides a means to obtain a summary disposition of issues of law or easily proved issues of material fact.  *Kedzie & 103rd Currency Exchange, Inc. v. Hodge*, 156 Ill. 2d 112, 115, 619 N.E.2d 732, 735 (1993).  A motion to compel arbitration is essentially a section 2-619(a)(9) motion to dismiss or stay an action in the trial court based on an affirmative matter, the exclusive remedy of arbitration.  *Travis*, 335 Ill. App. 3d at 1174, 782 N.E.2d at 325.

12

¶ 22    When presented with a motion to compel arbitration under section 3 of the Federal Arbitration Act (FAA) (9 U.S.C. § 3 (2012)), the trial court's inquiry is limited to certain gateway matters, such as whether the parties have a valid written agreement to arbitrate at all, and if so, whether the issues in dispute fall within the scope of the arbitration agreement. *Green Tree Financial Corp. v. Bazzle*, 539 U.S. 444, 452 (2003); *Jensen v. Quik International*, 213 Ill. 2d 119, 123, 820 N.E.2d 462, 465 (2004). In deciding those questions, a court is not to rule on the potential merits of the underlying claim. *AT&T Technologies, Inc. v. Communications Workers of America*, 475 U.S. 643, 650 (1986). The party seeking to compel arbitration has the burden to establish that the parties have a valid agreement to arbitrate and that the controversy falls within the scope of the arbitration provision. *Hubbert v. Dell Corp.*, 359 Ill. App. 3d 976, 983, 835 N.E.2d 113, 121 (2005).

¶ 23    Although the arbitration clause at issue states that the rules governing the arbitration are controlled by the FAA, it is the court that decides, initially, "the *question of arbitrability*." (Emphasis in original and internal quotation marks omitted.) *Hollingshead*, 396 Ill. App. 3d at 1099, 920 N.E.2d at 1258. In this regard, the question of arbitrability is decided under the substantive law of the FAA, but the court proceedings are governed in accordance with the Illinois rules of procedure, including the procedures set forth in section 2(a) of the Illinois Uniform Arbitration Act (Uniform Act) (710 ILCS 5/2(a) (West 2010)), because this case was filed in the circuit court of Illinois. See *Comdisco, Inc. v. Dun & Bradstreet Corp.*, 285 Ill. App. 3d 796, 801, 674 N.E.2d 902, 905 (1996). Section 2(a) of the Uniform Act states, in pertinent part, that if an opposing

13

party denies the existence of an arbitration agreement, the court "shall proceed summarily to the determination of the issue so raised and shall order arbitration if found for the moving party, otherwise, the application shall be denied." 710 ILCS 5/2(a) (West 2010).

¶ 24    Under section 2(a) of the Uniform Act, when a party denies the existence of the agreement to arbitrate, the trial court is directed to render a substantive disposition of the issues raised by the motion. See *Onni v. Apartment Investment & Management Co.*, 344 Ill. App. 3d 1099, 1104, 801 N.E.2d 586, 590-91 (2003); *Cohen v. Blockbuster Entertainment, Inc*., 338 Ill. App. 3d 171, 177-78, 787 N.E.2d 846, 851-52 (2003). A substantive disposition is not one which merely disposes of the motion in a conclusory fashion. *Onni*, 344 Ill. App. 3d at 1104, 801 N.E.2d at 590. A substantive disposition is a more considered disposition in which the trial court separately addresses each issue raised by the motion, supporting its resolution of each issue with specific factual findings or legal reasons. *Onni*, 344 Ill. App. 3d at 1104, 801 N.E.2d at 590.

¶ 25    Section 2(a) also directs the trial court to "proceed summarily" to a determination of the issues. The directive to "proceed summarily" has been interpreted as a directive to conduct a summary proceeding. *Onni*, 344 Ill. App. 3d at 1105, 801 N.E.2d at 591; *Comdisco*, 285 Ill. App. 3d at 801, 674 N.E.2d at 905. A summary proceeding may be defined, generally, as " 'a civil or criminal proceeding in the nature of a trial conducted without the formalities (as indictment, pleadings, and a jury) *** and used for the speedy and peremptory disposition of some minor matter.' " *Comdisco*, 285 Ill. App. 3d at 801, 674 N.E.2d at 905 (quoting Webster's Third New International Dictionary 2289 (1986)). Thus, when the trial court is faced with a motion to compel arbitration, the court should

act expeditiously and without a jury trial to make a substantive determination of whether a valid arbitration agreement exists, and to resolve any other issues raised by the motion to compel arbitration. *Onni*, 344 Ill. App. 3d at 1105, 801 N.E.2d at 591; *Comdisco*, 285 Ill. App. 3d at 801, 674 N.E.2d at 905.

¶ 26    In this case, Santander moved to compel arbitration. Therefore, it had the burden to establish whether the parties had a valid written agreement to arbitrate at all, and if so, whether the matter in controversy falls within the scope of the arbitration clause, and whether there are affirmative matters that defeat the right to arbitration pursuant to section 2 of the FAA (9 U.S.C. § 2 (2012)). The issues also raise questions regarding whether the arbitration agreement between Sturgill and Triad was assignable, whether the actual agreement had, in fact, been assigned to Santander, and whether the arbitration clause terminated with the alleged settlement of the purchase of Sturgill's Ford F-150 vehicle. The trial court also had to consider the affirmative matters raised by Sturgill, such as the questions regarding the "Settled in Full Letter" and the "Vehicle Payoff Confirmation" email, the authenticity issues raised by Nightengale, and the credibility and weight that should be afforded to the Nightengale declaration. Although the trial court recognized the existence of the many factual and legal issues raised by the motion to compel arbitration, it failed to make a substantive determination of any of these issues when it entered its order. Simply denying Santander's renewed motion to compel arbitration leaves this court without any basis for understanding the trial court's reasons for its ruling.

15

¶ 27 Where a trial court has failed to articulate any specific reasons for ruling on the motion to compel arbitration, the court has not issued a substantive disposition. *Onni*, 344 Ill. App. 3d at 1104, 801 N.E.2d at 590-91; *Comdisco*, 285 Ill. App. 3d at 801, 674 N.E.2d at 905. In other words, the court has not substantiated the existence or truth of any fact that would allow for the denial of the motion. Because there was no substantive disposition of the multitude of issues raised by Santander's renewed motion to compel arbitration, we cannot say that there was a sufficient showing to sustain the trial court's order denying the motion to compel arbitration. *Onni*, 344 Ill. App. 3d at 1104, 801 N.E.2d at 590-91; *Comdisco*, 285 Ill. App. 3d at 801, 674 N.E.2d at 905. Accordingly, we must reverse the order and remand the case to the trial court with instructions to proceed summarily, to resolve those issues that can properly be decided by the court under the FAA, and to render a disposition with some explanation or substantiation of the facts or rules of law that allow for the order entered.

¶ 28 In reversing the trial court's order and remanding this matter, we recognize that this will require an additional hearing. Our purpose is not to cause unnecessary delay in the proceedings. This case is complex. The trial court was asked to sort out a complicated controversy under the substantive federal law of the FAA, without ruling on the potential merits of the underlying claim. In these types of cases, the trial court is at a significant disadvantage when the parties do not clearly define the issues. On the two occasions when the court heard argument in this case, the court indicated to the parties that it did not have sufficient information, that certain documents had been submitted in a format that was incapable of being read, and that further discovery should be conducted.

The record reveals, however, that no additional discovery was conducted to further define the issues, and no evidentiary basis was offered for many of the contractual issues and defenses raised, thus leaving the court without the clarity it had requested. Moreover, the pleadings filed by the parties failed to identify, with specificity, those issues to be decided by the court pursuant to the FAA. We anticipate that these matters will be properly addressed on remand, so that the trial court will have adequate information upon which to render a substantive decision.

¶ 29 Finally, following oral arguments on appeal, Santander filed a "Second Motion to Supplement Record on Appeal and Clarify Question Asked at Oral Argument." In its motion, Santander sought leave to supplement the record with information that occurred in the trial court subsequent to the filing of the notice of interlocutory appeal. The motion, which was taken with the case, is hereby denied.

¶ 30 For the reasons stated, the circuit court's decision to deny Santander's renewed motion to compel individual arbitration is reversed, and the cause is remanded for further proceedings consistent with this opinion.

¶ 31 Reversed and remanded.

2016 IL App (5th) 140380

NO. 5-14-0380

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_____

| | | |
|---|---|---|
| FRANKLIN STURGILL, Individually and on Behalf of All Others Similarly Situated, | ) ) ) | Appeal from the Circuit Court of St. Clair County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 13-L-435 |
| SANTANDER CONSUMER USA, INC., | ) ) | Honorable Andrew J. Gleeson, |
| Defendant-Appellant. | ) ) | Judge, presiding. |

_____

**Opinion Filed:**            January 22, 2016

_____

**Justices:**        Honorable Judy L. Cates, J.

Honorable S. Gene Schwarm, P.J., and
Honorable James R. Moore, J.,
Concur

_____

**Attorneys
for
Appellant**
Michael F. Dahlen, Feirich, Mager, Green, Ryan, 2001 West Main Street, P.O. Box 1570, Carbondale, IL 62903; Michael D. Richman, Henry Pietrkowski, Reed Smith LLP, 10 South Wacker Drive, Chicago, IL 60606-7507

_____

**Attorney
for
Appellee**
Shari L. Murphy, The Law Offices of Shari L. Murphy, LLC, P.O. Box 136, Wood River, IL 62095-0136

_____