NOTICE
Decision filed 03/26/26. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2026 IL App (5th) 250821-U

NO. 5-25-0821

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE
This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

| | | |
|---|---|---|
| LARRY BALDWIN, DEBRA BALDWIN, JAMES WARDEN, VICKI WARDEN, and JEAN BULLOCK, | ) ) ) ) | Appeal from the Circuit Court of Jackson County. |
| Plaintiffs-Appellees, | ) ) | |
| v. | ) ) | No. 24-LA-79 |
| WARD CHRYSLER CENTER, INC, MARK WARD, and RON WARD, | ) ) ) | Honorable Christy W. Solverson, |
| Defendants-Appellants. | ) | Judge, presiding. |

JUSTICE BOLLINGER delivered the judgment of the court.
Justices Vaughan and Hackett concurred in the judgment.

**ORDER**

¶ 1    *Held*:   We affirm the circuit court's order denying defendants' motion to stay proceedings pending arbitration.

¶ 2    On November 21, 2024, plaintiffs Larry Baldwin, Debra Baldwin, James Warden, Vicki Warden and Jean Bullock filed a class action lawsuit against defendants Ward Chrysler Center, Inc., Mark Ward and Ron Ward for money damages. Plaintiffs alleged that defendants violated the Consumer Fraud and Deceptive Business Practices Act (Act) (815 ILCS 505/1 *et seq.* (West 2022)), surrounding new Chrysler vehicles purchased by them. More specifically, plaintiffs contended that defendants concealed the existence of factory-authorized rebates they and other similarly situated purchasers were entitled to receive. In response, defendants moved to stay the

1

proceedings in the circuit court and for an order requiring that the parties arbitrate their disputes, citing a binding arbitration agreement allegedly entered into between the parties at the time of purchase. Following a hearing on the motion, the circuit court denied defendants' motion to stay proceedings and compel arbitration. This appeal timely followed.

¶ 3                                    I. BACKGROUND

¶ 4     On November 21, 2024, plaintiffs filed a multi-count class action complaint against defendants alleging a violation of the Act. Plaintiffs alleged that they and others purchased new Chrysler vehicles from defendant, Ward Chrysler Center, Inc. (dealership). It was alleged that defendants, Mark Ward and Ron Ward, were equal shareholders, officers, directors and authorized agents of the dealership. According to the complaint, the dealership was authorized by FCA US, LLC (Chrysler) to sell new Chrysler automobiles in accordance with a general franchise agreement entered into between the dealership and Chrysler. Further, it was alleged that Chrysler provided rebates to purchasers of those vehicles through the dealership and that the franchise agreement required the dealership to notify, remit and transfer the rebates to customers like plaintiffs.

¶ 5     Plaintiffs contended that defendants concealed the existence of those rebates they and other similarly situated purchasers were entitled to receive concerning the sale of thousands of new Chrysler vehicles and that defendants wrongly retained those rebates. Plaintiffs sought an order of the circuit court certifying a proposed class of similarly situated persons who purchased new Chrysler vehicles from the dealership and did not receive credit, payment or transfer of any authorized manufacturer rebate from Chrysler for each customer's purchase of a new Chrysler vehicle between January 1, 2000, and the date of class certification. Plaintiffs further requested an award of punitive damages, reasonable costs and expenses, including reasonable attorney fees, and an award of interest at the maximum allowable rate.

¶ 6    On January 10, 2025, defendants filed a motion to stay proceedings in the circuit court pending arbitration. Defendants asserted that plaintiffs agreed to arbitrate the disputes raised in their complaint pursuant to standalone form arbitration agreements purportedly signed by plaintiffs arising out of their purchase of vehicles from the dealership. Copies of the arbitration agreements were attached and defendants cited the following language contained therein:

> "Any claim or dispute, whether in contract, tort, statute, or otherwise (including the interpretation ad [*sic*] scope of this clause, and the arbitrability of the claim or dispute), between you and use [*sic*] or our employees, agents, successors, or assigns, which arise out of or relate to your credit application, purchase or condition of this vehicle, this contract or any resulting transaction relationship … shall, at your or our election, be resolved by neutral, binding arbitration and not by court action. Any claim or dispute is to be arbitrated by a single arbitrator on an individual basis and not as a class action. You expressly waive any right you may have to arbitrate a class action."

¶ 7    Defendants contended that the arbitration agreements were expressly governed by Section 3 of the Federal Arbitration Act (FAA) (9 U.S.C. § 3 (2018)). Defendants contended that plaintiffs' action fell within the scope of the arbitration agreements and that arbitration was required to proceed before the National Arbitration Forum, the American Arbitration Association, or any other organization selected by plaintiffs subject to the dealership's approval. Defendants contended that plaintiffs circumvented the arbitration requirement by filing their lawsuit in the circuit court. Defendants requested an order staying the proceedings, including all discovery requests served by plaintiffs on defendants, and quashing third-party subpoenas issued by plaintiffs. Defendants further requested an award of attorney fees.

3

¶ 8    In response, plaintiffs asserted that the motion should be denied on the basis of fraud committed by defendants and the unconscionable nature of the arbitration agreements. More specifically, plaintiffs asserted that they were not given a meaningful opportunity to reject the terms of the arbitration agreements and that they would be able to demonstrate that in consideration of a "cost price disparity" the arbitration agreements would not be a sufficient remedy to make plaintiffs whole. Plaintiffs requested an order allowing sufficient time to conduct discovery concerning the issues raised in the motion and their response thereto, an evidentiary hearing on those issues, and an order denying the motion.

¶ 9    On March 18, 2025, after being granted leave to do so, plaintiffs filed a first amended class action complaint (FAC) premised on the same factual allegations as contained in the original complaint. The FAC asserted that defendants violated the Act and added a new count seeking a declaratory judgment regarding the arbitration agreements. More specifically, plaintiffs contended that the arbitration agreements were voidable and revocable as they were not properly formed, were fraudulently induced, and were unconscionable.

¶ 10    As to their contract formation claim in the FAC, plaintiffs alleged that the arbitration agreements did not contain the signatures of plaintiffs, James Warden, Vicki Warden, and Jean Bullock. They further alleged that the arbitration agreements pertaining to plaintiffs, Larry Baldwin and Debra Baldwin, appeared to bear their signatures, but defendants or their agents never discussed an arbitration agreement with them or otherwise brought their attention to any such agreement. As to their fraudulent inducement claim, plaintiffs asserted that defendants concealed that they were entitled to factory-mandated rebates. Regarding the unconscionability claim, plaintiffs asserted that the arbitration agreements were both procedurally and substantively unconscionable. As a result of the fraudulent inducement of the execution of the arbitration

4

agreements and their unconscionability, plaintiffs elected to rescind the arbitration agreements. Plaintiffs requested that the circuit court adjudicate the validity of the arbitration agreements and find and declare that they were voidable and revocable and that plaintiffs were entitled to rescind them.

¶ 11    In response to the FAC, on April 14, 2025, defendants filed a motion to stay pending arbitration. That motion, similar to defendants' prior motion to stay, asserted that the allegations in the FAC concerned a dispute falling under the scope of the arbitration agreements. As to the enforceability of the arbitration agreements, defendants asserted that the Baldwin defendants admitted to signing the agreements and that the Warden and Bullock defendants had not sworn that their signatures were forged. Defendants pointed out that they did not contest signing numerous other transaction documents at the same time which defendants contended contained identical signatures as shown by their signature comparisons. Defendants asserted that the circuit court "need not waste judicial resources on an evidentiary hearing based solely on a belated, unverified assertion." According to defendants, there was no dispute that the parties entered into an arbitration agreement.

¶ 12    As to plaintiffs' fraudulent inducement claim, defendants argued that the alleged fraud falls squarely within the scope of the arbitration agreements and was to be resolved by an arbitrator. Defendants further argued that the arbitration agreements were neither procedurally nor substantively unconscionable. Defendants requested that the circuit court enter an order staying proceedings pending arbitration and for recovery of its attorney fees.

¶ 13    In their response to the motion to stay, plaintiffs argued that they were not required to verify or attach any evidence, such as affidavits, to the FAC. Plaintiffs asserted that defendants failed to submit any affidavits or other evidence that would call into question the factual allegations in the

FAC and that those allegations must be taken as true in ruling on the motion. Plaintiffs attached their affidavits and deposition testimony of defendants' former and current employees in opposition to the motion. Plaintiffs asserted that their affidavits and the affidavit of defendants' former employee, David Hano, confirmed that the arbitration agreements were not legally formed because they were not properly executed by both parties and were therefore unenforceable.

¶ 14    In their affidavits, plaintiffs swore that all allegations in the declaratory judgment count in the FAC regarding the execution of the arbitration agreement as to each plaintiff were true and correct. All plaintiffs averred that defendants never discussed the arbitration agreements with them or otherwise brought to their attention any alleged arbitration agreements and that they were never given any arbitration agreements. In their affidavits, the Warden and Bullock plaintiffs asserted that the arbitration agreements did not contain their signatures. The Baldwin plaintiffs stated that while the signatures on the arbitration agreements pertaining to them were very similar to their signatures, they did not believe those agreements contained their signatures. David Hano asserted in his affidavit that the arbitration agreements attributable to the Baldwins allegedly bore his signature; however, he could unequivocally state that it was not his signature. Plaintiffs argued that the arbitration agreements involving the Baldwin plaintiffs were not signed by an authorized representative of defendants as set forth within Hano's affidavit.

¶ 15    Plaintiffs noted that the circuit court had the discretion to require discovery into these issues. However, plaintiffs asserted that the record was sufficient to summarily deny the motion to stay. Plaintiffs argued that the circuit court was required to determine the gateway issue as to the validity of the arbitration agreements and in doing so, must draw all reasonable inferences in favor of plaintiffs. Plaintiffs argued that the allegations in the FAC concerning their action for declaratory relief satisfied the pleading requirements to set aside the arbitration agreements based

6

on defendants' fraudulent inducement. Plaintiffs also argued that it was defendants' burden, as the moving party, to bring forth evidence or other material to establish the validity of the arbitration agreements.

¶ 16　In reply, defendants asserted that plaintiffs made judicial admissions in the FAC and in their affidavits that they would never have entered into the arbitration agreements had they known they were entitled to a rebate for the vehicles they purchased and that those admissions bound them to the arbitration agreements and required a stay of proceedings. Defendants also argued that it was irrelevant whether the arbitration agreements were signed by an authorized representative of defendants on the basis that a contract signed by only one party may be enforced against that party where delivered to the non-signing party and the non-signing party performed. Defendants asserted that the vehicles purchased were evidence of contract performance. Finally, defendants agreed with plaintiffs that there was a sufficient record for the circuit court to decide the motion without an evidentiary hearing.

¶ 17　On July 2, 2025, the circuit court conducted a non-evidentiary hearing on defendants' motion to stay proceedings. No additional evidence was presented at the hearing, only arguments of counsel. The circuit court took the matter under advisement and later issued a written order denying the motion. In its order, the circuit court first framed the issue as whether valid and enforceable arbitration agreements existed between plaintiffs and defendants. The circuit court noted that plaintiffs were challenging the validity of the arbitration agreements. After citing the applicable authorities, the circuit court found that the parties agreed it had a sufficient record to determine whether to grant or deny the motion. The circuit court stated that it reviewed all of the pleadings and exhibits and after drawing all reasonable inferences in favor of the non-moving party, it found that defendants failed to establish the existence of valid arbitration agreements

7

between the parties. The circuit court discussed the affidavits submitted by plaintiffs challenging the validity of the agreements and noted that they stated that the signatures were not valid. The circuit court found that defendants did not dispute the affidavits and failed to file counter-affidavits of the signatories on the affidavits or other individuals who may have assisted in the formation of the alleged agreements. After finding that defendants failed to establish that the parties entered into valid arbitration agreements, the circuit court denied the motion to stay.

¶ 18    Defendants filed a timely motion to reconsider, or in the alternative, to vacate or modify the circuit court's order and to set the matter for an evidentiary hearing. Defendants advanced the same arguments that had been rejected by the circuit court and took issue with the circuit court's failure to specifically address their judicial admissions argument in its order. Defendants alternatively argued that if the circuit court believed there were no judicial admissions, plaintiffs' affidavits created an issue of fact requiring an evidentiary hearing after allowing for discovery.

¶ 19    In response, plaintiffs asserted that defendants failed to present any newly discovered evidence or changes in the law and that there were no errors in the circuit court's application of the law and therefore, the motion should be denied. Plaintiffs further argued that defendants waived any error concerning the circuit court's denial of defendants' motion without an evidentiary hearing as defendants agreed with plaintiffs that the record was sufficient for the circuit court to rule on the motion without the presentation of evidence. Prior to the circuit court ruling on their pending motion, defendants filed a notice of interlocutory appeal as of right pursuant to Illinois Supreme Court Rule 307(a)(1) (eff. Nov. 1, 2017).

¶ 20                                II. ANALYSIS

¶ 21    An order granting or denying a motion to compel arbitration is injunctive in nature and is an appealable interlocutory order under Rule 307(a)(1). *Hartz v. Brehm Preparatory School, Inc.*,

2021 IL App (5th) 190327, ¶ 21. Defendants' motion to reconsider does not toll the time for filing their appeal. *In re Marriage of Salviola*, 2020 IL App (1st) 182185, ¶ 39. Therefore, we have jurisdiction over this interlocutory appeal pursuant to Rule 307(a)(1). *Ward v. Hilliard*, 2018 IL App (5th) 180214, ¶ 16.

¶ 22    In an appeal from the denial of a motion to compel arbitration without an evidentiary hearing, our review is *de novo. Sturgill v. Santander Consumer USA, Inc.*, 2016 IL App (5th) 140380, ¶ 20. In this case, the circuit court denied the motion to compel arbitration based upon the pleadings, exhibits, affidavits, and the presentations by counsel, and so the standard of review is *de novo. Gaines v. Ciox Health, LLC*, 2024 IL App (5th) 230565, ¶ 24.

¶ 23    Defendants' motion was filed pursuant to Section 3 of the FAA. "The FAA reflects the fundamental principle that arbitration is a matter of contract." *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 67-68 (2010). It is well settled that where a dispute concerns the formation of a contract, the dispute is generally for the court to decide. *Granite Rock Co. v. International Brotherhood of Teamsters*, 561 U.S. 287, 296 (2010). State law principles of contract formation determine whether a contract exists between the parties. *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995); *Peterson v. Devita*, 2023 IL App (1st) 230356, ¶ 22.

¶ 24    Section 2-619(a)(9) of the Code of Civil Procedure (735 ILCS 5/2-619(a)(9) (West 2022)) allows for a dismissal of a claim or other appropriate relief, such as a stay of the proceedings, where the claim is barred by an affirmative matter that avoids the legal effect of or defeats a claim. A motion to compel arbitration and stay the proceedings is essentially a section 2-619(a)(9) motion to stay an action in the circuit court based on an affirmative matter—the exclusive remedy of arbitration. *Gaines*, 2024 IL App (5th) 230565, ¶ 25. The moving party has the initial burden to establish that the parties have a valid agreement to arbitrate and that the controversy falls within

the scope of the arbitration provision. *Id.* In ruling on a motion to compel arbitration, the circuit court must construe all pleadings and supporting documents in a light most favorable to the nonmoving party. *Id.*

¶ 25    The question of arbitrability is decided under the substantive law of the FAA, but because this case was filed in the circuit court, the court proceedings are governed in accordance with the Illinois rules of procedure, including the procedures set forth in section 2(a) of the Uniform Arbitration Act (Uniform Act) (710 ILCS 5/2(a) (West 2022)). *Schneider v. Cedar Ridge Health and Rehabilitation Center, LLC*, 2026 IL App (5th) 250121-U, ¶ 80. Section 2(a) of the Uniform Act states, in pertinent part, that if an opposing party denies the existence of an arbitration agreement, the court "shall proceed summarily to the determination of the issue so raised and shall order arbitration if found for the moving party, otherwise, the application shall be denied." 710 ILCS 5/2(a) (West 2022). "The directive to 'proceed summarily' has been interpreted as a directive to conduct a summary proceeding." *Sturgill*, 2016 IL App (5th) 140380, ¶ 25. Therefore, when the circuit court is confronted with a motion to compel arbitration, it should proceed promptly and without a jury trial to make a substantive determination regarding the existence of a valid arbitration agreement. *Schneider*, 2026 IL App (5th) 250121-U, ¶ 80.

¶ 26    Defendants contend that the circuit erred in failing to resolve conflicting allegations in the FAC against plaintiffs. Defendants cite *Pioneer Bank and Trust, Co. v. Austin Bank of Chicago*, 279 Ill. App. 3d 9 (1996) for the proposition that when the nature of statements in a pleading are such that the plaintiff must know which statement is true, inconsistent pleading is improper; the pleading will be deemed ambiguous, with any doubt resolved against the pleader. *Id.* at 14. We find defendants' reliance on *Austin Bank* misplaced. There, the circuit court granted motions for

10

judgment on the pleadings (735 ILCS 5/2-615(e) (West 1992)) where the only matter to be considered by the court in ruling on such a motion was the allegations in the pleadings. *Id.* at 13.

¶ 27    Here, the circuit court was not limited to the allegations in the FAC in ruling on defendants' motion, and was permitted to consider all matters of record, including plaintiffs' affidavits to place those allegations in the proper context. Further, it was defendants' burden to prove that the parties had a valid agreement to arbitrate and the circuit court was required to construe all pleadings and supporting documents in a light most favorable to plaintiffs in ruling on the motion. See *Gaines*, 2024 IL App (5th) 230565, ¶ 25. Having considered all matters of record properly before the circuit court in ruling on the motion, the circuit court found that defendants did not meet their burden of proving that the parties had valid agreements to arbitrate.

¶ 28    After defendants filed their original motion to stay proceedings based on the alleged existence of agreements to arbitrate, plaintiffs filed the FAC which included a new count for declaratory relief challenging the validity and enforceability of those agreements. Plaintiffs specifically asserted in paragraph 37 of the FAC that those agreements were not properly formed. In paragraphs 38 and 39 of the FAC, plaintiffs asserted that the purported agreements as to Jean Bullock and the Warden plaintiffs did not contain their signatures. In paragraph 40 of the FAC, plaintiffs asserted that purported agreements as to the Baldwin plaintiffs appeared to bear their signatures, but denied that such agreements were ever discussed with them or brought to their attention by defendants. Plaintiffs then advanced several legal theories in support of their claim for declaratory relief, including that the arbitration agreements, being contracts, were never formed. The circuit court was required to construe the allegations in the FAC in a light most favorable to plaintiffs. See *Gaines*, 2024 IL App (5th) 230565, ¶ 25.

11

¶ 29    The circuit court specifically found that the affidavits submitted by plaintiffs challenging the validity of the arbitration agreements established that the signatures were not valid. The circuit court also noted that defendants failed to file counter-affidavits from the signatories on the affidavits or from other individuals who may have assisted in the formation of the alleged arbitration agreements.

¶ 30    In their affidavits, all plaintiffs asserted that defendants never discussed the arbitration agreements with them or otherwise brought to their attention any alleged arbitration agreements and that they were never given any arbitration agreements. In their affidavits, the Warden and Bullock plaintiffs averred that the arbitration agreements did not contain their signatures. The Baldwin plaintiffs claimed that while the signatures on the arbitration agreements pertaining to them were very similar to their signatures, they did not believe those agreements contained their signatures. David Hano swore in his affidavit that it was not his signature on the arbitration agreements attributable to the Baldwins. Construing the allegations in the FAC and affidavits in a light most favorable to plaintiffs, the circuit court correctly found that defendants did not meet their burden of establishing that the parties had valid agreements to arbitrate. See *Gaines*, 2024 IL App (5th) 230565, ¶ 25.

¶ 31    Defendants also contend that plaintiffs made judicial admissions such that the circuit court erred in finding that defendants did not meet their burden of establishing that the parties entered into valid agreements to arbitrate. "Judicial admissions are defined as deliberate, clear, unequivocal statements by a party about a concrete fact within that party's knowledge." *Smith v. Pavlovich*, 394 Ill. App. 3d 458, 468 (2009). "Where made, a judicial admission may not be contradicted in a motion for a summary judgment or at a trial." *Id.* "In order to constitute a judicial admission, a statement must not be a matter of opinion, estimate, appearance, inference, or

12

uncertain summary." *Id.* "It must be an intentional statement that relates to concrete facts and not an unclear summary." *Id.* "What constitutes a judicial admission must be decided under the circumstances in each case, and before a statement can be held to be such an admission, it must be given a meaning consistent with the context in which it was found." *Id.* "It must also be considered in relation to the other testimony and evidence presented." *Id.*

¶ 32    In *Mitchell/Roberts Partnership v. Williamson Energy, LLC*, 2025 IL App (5th) 240354, ¶ 85, we recognized a split of authority among districts regarding the appropriate standard of review to apply when analyzing whether a circuit court should have treated a statement as a judicial admission. However, we found that the cases advocating for either standard of review (*de novo* or abuse of discretion) agree on the same basic framework to apply in determining whether to deem a statement a judicial admission as discussed above. *Mitchell/Roberts Partnership, LLC*, 2025 IL App (5th) 240354, ¶ 85. Our conclusions in this case remain the same under either standard of review.

¶ 33    We are unable to conclude that the circuit court erred in not finding that plaintiffs' pleading allegations and averments amounted to judicial admissions that valid arbitration agreements were entered into between the parties. Plaintiffs' pleading allegations asserted various theories supporting their request for declaratory relief in the FAC. Those theories challenged the validity and enforceability of the alleged arbitration agreements. While certain of those theories rest on the assumption that the parties entered into arbitration agreements (fraudulent inducement and unconscionability theories), plaintiffs also challenged the validity of the arbitration agreements under principles of contract formation. We are unable to find the allegations in the FAC to be "deliberate, clear, unequivocal statements" by plaintiffs that the parties entered into valid agreements to arbitrate. See *Pavlovich*, 394 Ill. App. 3d at 468.

13

¶ 34    Moreover, the allegations in the FAC cannot be considered in a vacuum in determining whether they constitute judicial admissions. Plaintiffs' unverified pleading allegations must also be considered in relation to the affidavits of record and given a meaning consistent with the context in which they were made. *Id*. In their affidavits, all plaintiffs swore that defendants never discussed the arbitration agreements with them or otherwise brought to their attention any alleged arbitration agreements and that they were never given any arbitration agreements. In their affidavits, the Warden and Bullock plaintiffs averred that the arbitration agreements did not contain their signatures. The Baldwin plaintiffs asserted that while the signatures on the arbitration agreements pertaining to them were very similar to their signatures, they did not believe those agreements contained their signatures. Considering all matters of record before the circuit court in ruling on the motion, we cannot conclude the circuit court erred in not finding that plaintiffs' pleading allegations and averments amounted to judicial admissions that valid arbitration agreements were entered into between the parties.

¶ 35    Defendants next argue that the circuit court erred in applying an inapplicable summary judgment standard requiring that defendants present counter-affidavits. As discussed above, this argument runs contrary to defendants' burden of proof on their motion. *Gaines*, 2024 IL App (5th) 230565, ¶ 25 (the moving party has the initial burden to establish that the parties have a valid agreement to arbitrate). Here, the circuit court properly determined that plaintiffs did not make judicial admissions that the parties entered into valid arbitration agreements and thus, defendants were required to bring forward affidavits or other evidentiary material properly considered by the circuit court in ruling on their motion. See *id*. (a motion to compel arbitration and stay the proceedings is essentially a section 2-619(a)(9) motion to stay an action in the circuit court based on an affirmative matter). Having failed to present any affidavits or other evidentiary material

14

properly considered in ruling on defendants' motion, the circuit court correctly found that defendants failed to meet their burden of proof.

¶ 36   Defendants further argue that the circuit court erred in summarily deciding the issue of whether the parties entered valid arbitration agreements without allowing for discovery and an evidentiary hearing. Plaintiffs contend that defendants waived this issue. Prior to the hearing on the motion, defendants agreed with plaintiffs that the record was sufficient for the circuit court to rule on the motion without further discovery or evidence. The circuit court specially found that there was no dispute that it had a sufficient record to determine whether to grant or deny the motion in its order. A "party cannot sit idly by while the trial court undertakes a course of action and then allege error in that regard." (Internal quotation marks omitted.) *Mikoff v. Unlimited Dev., Inc.*, 2024 IL App (4th) 230513, ¶ 29. Defendants did just that by agreeing to the manner in which the circuit court conducted a hearing on their motion. We find no merit to defendants' final argument.

¶ 37                               III. CONCLUSION

¶ 38   For the foregoing reasons, we affirm the order of the circuit court of Jackson County denying defendants' motion to stay proceedings pending arbitration.

¶ 39   Affirmed.

15