NOTICE

Decision filed 01/27/26. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2026 IL App (5th) 250303-U

NO. 5-25-0303

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE

This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

| | | |
|---|---|---|
| SANDRA LOEB, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Champaign County. |
| | ) | |
| v. | ) | No. 25-CH-3 |
| | ) | |
| SPIROS LAW, P.C., JAMES D. SPIROS, | ) | |
| MIRANDA L. SOUCIE, and DANIELLE E. CAIN, | ) | Honorable |
| | ) | Jason M. Bohm, |
| Defendants-Appellees. | ) | Judge, presiding. |

_____

JUSTICE McHANEY delivered the judgment of the court.
Justice Boie concurred in the judgment.[*]

**ORDER**

¶ 1    *Held*: Where the Spiros Law P.C.'s arbitration paragraph in its shareholders' agreement was unambiguous regarding the selection method and number of arbitrators, although it contained a scrivener's error, we find that there was an enforceable method for the appointment of arbitrators and affirm the trial court's order compelling arbitration. Where there was a scrivener's error in the arbitration clause regarding the addition of an additional arbitrator after Danielle E. Cain was added as a shareholder, and Cain then withdrew her arbitration demand, the trial court properly enforced the clause as agreed upon by the parties and there was no reformation of the agreement. Where the trial court allowed the filing of Miranda L. Soucie's affidavit but expressly did not consider the contents of the affidavit in compelling arbitration, we affirm.

_____

      [*]Justice Moore fully participated in the decision prior to his retirement. See *Cirro Wrecking Co. v. Roppolo*, 153 Ill. 2d 6 (1992).

1

¶ 2　　Sandra Loeb (Loeb) appeals from the trial court's March 20, 2025, order granting a Motion to Compel Arbitration and Dismiss or Stay Litigation filed by the defendants, Spiros Law, P.C., James D. Spiros (Spiros), Miranda L. Soucie (Soucie), and Danielle E. Cain (Cain) (collectively, the defendants). On appeal, Loeb argues that the Spiros Law, P.C. written shareholders' agreement contained an ambiguous provision regarding the appointment of an arbitrator and contends that the arbitration agreement must be terminated pursuant to section 3 of the Uniform Arbitration Act (Act) (710 ILCS 5/3 (West 2022)) due to its failure to include an enforceable method for appointment of an arbitrator; questions whether the shareholders' agreement can be reformed to resolve the alleged ambiguity; and finally argues that the trial court abused its discretion in denying her motion to strike portions of Soucie's affidavit. For the following reasons, we affirm.[1]

¶ 3　　　　　　　　　　　　　　　　I. BACKGROUND

¶ 4　　On January 21, 2025, Loeb filed her complaint against the law firm where she had been employed and against three of its attorneys alleging that the firm and the attorneys "unlawfully diluted" her shareholder interest by paying themselves an unspecified amount of additional compensation "without a unanimous vote of the corporate directors." Loeb alleged that the directors purchased her shares without her agreement "and for an amount that undervalued their worth" and that they were using their majority interest in Spiros Laws "to manipulate and oppress Loeb by demanding arbitration by a panel of four arbitrators, three of whom Defendants purport[ed] to have chosen."

---

[1]On July 7, 2025, the defendants, Spiros Law, P.C., James D. Spiros, Miranda L. Soucie, and Danielle E. Cain, filed a motion to supplement the record to include email communications. The emails were between the attorneys for the parties and Leslie Erdman, Court Clerk for Circuit Judge Jason M. Bohm, and were dated between March 13, 2025, and March 17, 2025. On July 21, 2025, this court took the motion with the case. We grant the motion to supplement.

¶ 5    Loeb joined the firm in 2008 and obtained partnership in 2010; Soucie joined the firm in 2010 and obtained partnership in 2013; and Cain joined the firm in 2020 and became a partner in May 2023 and was granted an ownership interest in April 2024.

¶ 6    In April 2024 the firm held its annual meeting over the course of several days with all attorneys present. Loeb, Spiros, Soucie, and Cain entered into a shareholders' agreement regarding ownership and management of Spiros Law. All attorneys executed the agreement. The parties, excluding Cain, had entered into similar shareholders' agreements in previous years. The 2024 shareholders' agreement set forth the ownership percentages of common stock in the law firm. Spiros owned 65%, Soucie owned 26%, Loeb owned 8%, and Cain owned 1%. After the meeting, each attorney in the firm was designated as an officer of the company.

¶ 7    The shareholders' agreement provided each of the four partners an equal vote. Salaries were to be set "by the unanimous vote of the Directors." The Spiros law firm customarily issued shareholder distributions on a quarterly basis with the distributions being greater than the salaries. Shareholders were allowed to sell, transfer, encumber, or otherwise dispose of their interests by sale to the corporation or to another shareholder.

¶ 8    Paragraph P of the shareholders' agreement provided as follows:

> "The Shareholders shall annually attempt to agree unanimously upon the value of the net worth of the Corporation, exclusive of all work-in-progress and said value shall be entered annually into the minutes of the Corporate book. This valuation, if made, shall be binding for all purposes of this Agreement for twelve (12) months after it is agreed upon, subject only to necessary adjustments for obvious changes in value (*e.g.*, cash, increased indebtedness, and reduction in liabilities). *In the event of the withdrawal of any Shareholder*, this figure shall be conclusive and binding." (Emphasis added.)

The term, "withdrawal" used in this paragraph in the phrase, "withdrawal of any Shareholder," is not defined.

¶ 9    The shareholders' agreement provides guidance covering major illness, disability, and/or death of a shareholder. However, it does not provide guidance if a shareholder resigns from the firm.

¶ 10    On June 25, 2024, and approximately 10 weeks after the execution of the current shareholders' agreement, Spiros proposed to Loeb that she relinquish her ownership interest in the firm and accept a new compensation structure without shareholder distributions. The change in distribution practice was designed to make the distributions equitably tied to the types of law practiced. More simply, the medical malpractice and personal injury sectors of the practice were more lucrative than the worker's compensation sector. Loeb primarily practiced in worker's compensation. Spiros explained that Loeb had unfairly benefited by receiving disproportionate distributions tied to the more lucrative areas of practice—medical malpractice and personal injury. Spiros suggested that Loeb had been paid "forward" for her work and that her compensation would be henceforth "adjusted to reflect the benefits that were provided over the many prior years." Spiros asked Loeb to consider a compensation package that would give her a set percentage of the income she generated instead of salary and distributions to which she was entitled under the shareholders' agreement. Spiros made no offer to purchase or otherwise compensate Loeb for her ownership interest.

¶ 11    On June 28, 2024, Spiros and Soucie met with Loeb to discuss the proposal. Loeb stated that she wanted to remain a shareholder, while Spiros and Soucie insisted that she relinquish her shareholder interest. No agreement was reached.

¶ 12　On July 7, 2024, Soucie emailed Loeb a draft Non-Equity Partnership Agreement, which would have required Loeb to surrender her shares to Spiros Laws with no compensation. The agreement also was backdated to April 1, 2024. Soucie and Spiros then met with Loeb on July 8, 2024, again insisting that she relinquish her shares. Loeb refused to do so without compensation.

¶ 13　Thereafter, Loeb began negotiating with Spiros and Soucie to potentially sell her shareholder interest and for continued employment terms. At that time, Spiros and Soucie made it clear to Loeb that they wanted her to continue to lead the workers' compensation practice at the firm.

¶ 14　Finally in late October 2024 Loeb sent written notice of her decision to end her employment with Spiros Law effective at the end of the year using accrued vacation days, with her last physical day in the office being November 27, 2024. Loeb later announced that she was joining a firm in Bloomington.

¶ 15　On November 27, 2024, Spiros and Soucie sent Loeb a letter in which they indicated that Loeb had "resigned" and withdrawn from the firm effective November 27, 2024. They enclosed a check in an amount that reportedly represented her accumulated vacation time and stated that it was unethical to remain a shareholder in Spiros Law while practicing in another firm. They enclosed a second check to Loeb that they stated represented 8% of Spiro Law's net worth—Loeb's ownership percentage. Loeb did not cash the checks; did not resign as a director of Spiros Law; did not relinquish her Spiro Law shares; did not vote on Spiros Law's decision to make November 27, 2024, the effective date of her resignation; and did not participate in a vote to remove herself as a director of Spiros Law.

¶ 16　In partial response to Loeb's subsequent request for records related to any meetings held in her absence, Spiros Law made a demand for arbitration on multiple issues, including whether

her resignation from the firm amounted to a withdrawal under paragraph P of the shareholders' agreement; whether she could remain an employee, officer, or shareholder of Spiros Law while employed by another law firm; whether paragraph P of the shareholders' agreement was binding as to the value of Loeb's shares; whether she breached her fiduciary duty to Spiros Law by attempting to practice law simultaneously with Spiros Law and the new firm; and whether Spiros Law, Spiros, Soucie, and Cain were entitled to recover attorneys' fees and arbitration expenses for Loeb's refusal to accept and honor the terms of the shareholders' agreement.

¶ 17 In Loeb's complaint, she argued that Spiros, Soucie, and Cain breached the shareholders' agreement. She also contended that whether the intent of the shareholders' agreement to either have a single arbitrator or a panel of arbitrators was unclear and ambiguous.

¶ 18 Loeb also argued that there was an actual controversy regarding whether the method for appointing an arbitrator was specified in the shareholders' agreement; that Spiros, Soucie, and Cain breached the shareholders' agreement in multiple ways, and that she suffered damages due to their breaches; that Spiros Law violated the Business Corporation Act of 1983 (805 ILCS 5/1.01, *et seq.* (West 2022)) in that its actions were illegal oppressive, and fraudulent; that Spiros and Soucie breached their fiduciary duties to deal with her "fairly, honestly, openly, and with the utmost good faith" resulting in damages; that the court should compel the examination of records pursuant to section 7.75 of the Business Corporation Act (*id.* § 7.75), and award her damages and costs of suit; that she was owed wages based upon her unused vacation time pursuant to the Illinois Wage Payment and Collection Act (820 ILCS 115/1, *et seq.* (West 2022)); and that Spiros Law, Spiros, and Soucie violated the Right of Publicity Act (765 ILCS 1075/1, *et seq.* (West 2022)) because they continued to use her name, photograph, image, and likeness on Spiros Law's website,

6

Facebook page, and Instagram profile without her consent after December 31, 2024, for which she was owed damages, including punitive damages, attorneys' fees, and costs of suit.

¶ 19    On January 15, 2025, Spiros Law, Spiros, Soucie, and Cain (the defendants) filed their motion to compel arbitration and dismiss or stay the litigation. In support, the defendants cited paragraph J of the shareholders' agreement, which provided:

> "Any party to this Agreement may demand arbitration pursuant to the Illinois Uniform Arbitration Act. Arbitral matters include, but are not limited to, any controversy or claims of any party arising out of or relating to this Agreement. If the parties cannot agree upon a single arbitrator, each party shall designate an arbitrator, and the three (3) chosen arbitrators will designate a fourth arbitrator. The cost of the arbitration will be split equally by all parties involved. Arbitration, pursuant to this Agreement, will be made under the rules in effect on the date a demand for arbitration is made. Any award granted pursuant to arbitration may include attorney fees and costs for the prevailing party. Any arbitration, pursuant to this paragraph, will be binding upon all parties. The laws of the State of Illinois will apply to any arbitration of this agreement."

The defendants contend that the parties to this agreement are clearly specified as Spiros, Soucie, Loeb, and Cain in both the recitals of the agreement and its conclusion.

¶ 20    In response, Loeb did not argue that the shareholders' agreement lacked an arbitration clause or that the agreement was invalid and was not binding upon the parties. Instead, she argued that the arbitration agreement should statutorily terminate because the methods to appoint arbitrators were uncertain (710 ILCS 5/3 (West 2022)); that the arbitration clause was vague because the method for appointing a fourth arbitrator was not clearly defined; that the defendants' proposal for a four-arbitrator panel was without support and could result in a tie vote; that a panel

7

with three members chosen by the defendants and only the fourth chosen by Loeb would be substantively unconscionable and would favor the defendants; and that Loeb had responded to the defendants by rejecting their arbitrator selection proposal, and suggesting alternative methods.

¶ 21    On March 7, 2025, the defendants replied to Loeb in part by an affidavit created by defendant Soucie. The affidavit stated that the parties' intent in paragraph J of the agreement was that each of the four shareholders would select an arbitrator and the four selected arbitrators would select a fifth arbitrator. The defendants' reply argued that Loeb acknowledged the existence of an applicable arbitration clause and the Act mandated arbitration if there was a valid arbitration agreement; that the statutory termination clause (710 ILCS 5/3 (West 2022)) was inapplicable because the arbitration clause specified a method for the selection of arbitrators; that the arbitration clause reflected the parties' desire to arbitrate, and any numerical discrepancies in the number of arbitrators constituted a scrivener's error; that the arbitration clause was not unconscionable because all parties were sophisticated attorneys, and the clause was fair because each party selected his or her own arbitrator, with costs split equally; and that Cain, as a 1% shareholder, had withdrawn her demand for arbitration.

¶ 22    On March 13, 2025, Loeb filed her sur-reply arguing that she never intended that paragraph J of the agreement involved the selection of four arbitrators by the parties; that she had no involvement in drafting the agreement; that she did not intend the agreement to reflect a method for appointing a panel of arbitrators totaling more than three; and that the December 31, 2024, demand was not in compliance with the Act.

¶ 23    Also on March 13, 2025, the defendants sought leave to file Spiros' counter-affidavit in response to Loeb's sur-reply. The next day, the court orally granted the motion. In the affidavit,

contrary to Loeb's claims, Spiros stated that Loeb reviewed and modified the shareholders' agreements.

¶ 24    On March 14, 2025, the trial court heard the defendants' motion to compel arbitration and dismiss or stay litigation. The trial court granted the defendants' motion to compel arbitration pursuant to the shareholders' agreement and made the following findings:

> "Your papers do a good job, I think, of laying everything out, so I'll just, I think, put my cards on the table and tell you where I've come out after reading all of this is, I don't think there's any question that the parties intended arbitration. Two, I don't think there's any question that this dispute falls within arbitration intent. Three, I don't think there's any question that the agreement has and, in the words of 710 ILCS 5/3, quote, a method of appointing arbitrators."

¶ 25    The hearing continued on the method of appointing arbitrators. Loeb indicated that while she agreed that the numerical arbitrator designations in the shareholders' agreement constituted a scrivener's error, she interpreted the clause as appointing a single neutral arbitrator—the fourth arbitrator. Loeb's theory was that arbitration would solely be conducted by the fourth arbitrator as the three chosen arbitrators were only chosen for the purpose of selecting the fourth or true arbitrator. Additionally, Loeb argued that accepting the arbitration clause as written with the appointment of four arbitrators was inherently flawed because there could be a deadlock with the even number of appointed arbitrators. In response, the defendants advocated for enforcement of the clause as written, which would result in Spiros, Soucie, and Loeb each selecting an arbitrator, and those three appointed arbitrators selecting a fourth arbitrator. In entering its order compelling arbitration, the court stated:

9

"I think the problem with that argument [that the fourth arbitrator would operate as a single arbitrator instead of being part of a panel of four arbitrators] and why I don't agree with it is the language says, if the parties cannot agree to a single arbitrator, each party shall designate an arbitrator, and the three chosen arbitrators shall designate a fourth arbitrator, and it seems to me it would be inconsistent with that language to say kind of, and to follow on, and that fourth arbitrator will then act as the sole arbitrator. *** [T]he agreement clearly allows for when there can't be an agreement as to the selection of arbitrators, then it has a method. That's why I think that that statutory termination of arbitration doesn't work, is because I do think there is a method in it. And while it might be a scrivener's error—in fact, in my view it's likely a scrivener's error, I do think the—and I think this is probably fairer to Ms. Loeb than the three defendants, is just to enforce the plain language without any reformation of the provision, and the parties can—and the parties here, I'll consider Mr. Spiros, Ms. Soucie, and Ms. Loeb—I'm not trying to exclude Ms. Cain, but as a one percent shareholder, I think that the—the defense needs to pick two arbitrators, Ms. Loeb can pick a third, and then those three chosen arbitrators will pick a fourth, and I think then a panel of four arbitrators will decide it. I understand the hypothetical concern that maybe a majority vote of the arbitrators can't—won't happen, but I think that's a hypothetical that is contemplated and caused by the language of the arbitration provision."

¶ 26    The trial court entered its written order on March 14, 2025, granting the defendants' motion to compel arbitration and dismissed the case without prejudice ordering the parties to participate in arbitration pursuant to paragraph J of the shareholders' agreement with Spiros, Soucie, and Loeb each selecting an arbitrator, and the three chosen arbitrators selecting a fourth arbitrator, with the four-arbitrator panel disposing of arbitration "through final award."

10

¶ 27 On April 14, 2025, Loeb filed her notice of appeal pursuant to Supreme Court Rule 303 (Ill. S. Ct. R. 303 (eff. July 1, 2017)).

¶ 28                                    II. ANALYSIS

¶ 29 On appeal from a trial court's order compelling arbitration without an evidentiary hearing, the standard of review is *de novo*. *Gaines v. Ciox Health, LLC*, 2024 IL App (5th) 230565, ¶ 24. A trial court's interpretation of contractual terms is also reviewed under a *de novo* standard. *Sherwood Commons Townhome Owners Ass'n, v. Dubois*, 2020 IL App (3d) 180561, ¶ 28.

¶ 30 " 'The Uniform Arbitration Act (710 ILCS 5/1 *et seq.* (West 2004)) embodies a legislative policy favoring enforcement of agreements to arbitrate future disputes.' " *American Family Mutual Insurance Co. v. Stagg*, 393 Ill. App. 3d 619, 622 (2009) (quoting *Royal Indemnity Co. v. Chicago Hospital Risk Pooling Program*, 372 Ill. App. 3d 104, 110 (2007)). "[I]n Illinois, 'the Act must be deemed part of a contract containing an arbitration clause.' " *Advocate Financial Group v. Poulos*, 2014 IL App (2d) 130670, ¶ 48 (quoting *Johnson v. Baumgardt*, 216 Ill. App. 3d 550, 560 (1991)). Once a contract containing a valid arbitration clause has been executed, the parties are " 'irrevocably committed to arbitrate all disputes arising under the contract.' " *Id.* (quoting *Johnson*, 216 Ill. App. 3d at 559).

¶ 31 When a party seeks to stay arbitration, "the Uniform Arbitration Act initially confers jurisdiction on the courts to determine whether the parties have agreed to arbitrate a dispute." *Equistar Chemicals, LP v. Hartford Steam Boiler Inspection & Insurance Co. of Connecticut*, 379 Ill. App. 3d 771, 776 (2008). Then, if the trial court finds that an arbitration agreement is applicable, and the party opposed to arbitration refuses to arbitrate, "the court shall order the parties to proceed with arbitration, but if the opposing party denies the existence of the agreement to arbitrate, the court shall proceed summarily to the determination of the issue so raised and shall

11

order arbitration if found for the moving party." 710 ILCS 5/2(a) (West 2022). The court must compel arbitration "if it is clear that the dispute falls within the scope of the arbitration clause or agreement." (Internal quotation marks omitted.) *Radiant Star Enterprises, L.L.C. v. Metropolis Condominium Ass'n*, 2018 IL App (1st) 171844, ¶ 52. Moreover, "[a]t a hearing to compel arbitration, the only issue for the trial court is whether an agreement exists to arbitrate the dispute in question." (Internal quotation marks omitted.) *Brookner v. General Motors Corp.*, 2019 IL App (3d) 170629, ¶ 17. A trial court's ruling to compel arbitration is not discretionary if there is a valid arbitration agreement and the dispute falls within the scope of the agreement. *Holllingshead v. A.G. Edwards & Sons, Inc.*, 396 Ill. App. 3d 1095, 1102 (2009) (citing *Griffith v. Wilmette Harbor Ass'n*, 378 Ill. App. 3d 173, 180 (2007)).

¶ 32　　On December 31, 2024, Spiros, Soucie, and Cain notified Loeb that she needed to submit her shareholder dispute to arbitration. Instead, on January 8, 2025, Loeb filed her complaint in the trial court.

¶ 33　　Section 2 of the Act provides as follows:

"On application of a party showing an [arbitration] agreement *** and the opposing party's refusal to arbitrate, the court shall order the parties to proceed with arbitration, but if the opposing party denies the existence of the agreement to arbitrate, the court shall proceed summarily to the determination of the issue so raised and shall order arbitration if found for the moving party, otherwise, the application shall be denied." 710 ILCS 5/2 (West 2022).

Essentially, to compel arbitration, the Act merely requires that there is an agreement between the parties to arbitrate, and that the opposing party refuses to comply. *TDE Ltd. v. Israel*, 185 Ill. App. 3d 1059, 1066 (1989).

12

¶ 34    A. The Arbitration Clause is Unambiguous and Specifies an Enforceable Selection Method

¶ 35    Section 1 of the Act states: "a provision in a written contract to submit to arbitration any controversy thereafter arising between the parties is valid, enforceable and irrevocable save upon such grounds as exist for revocation of any contract." 710 ILCS 5/1 (West 2022). As stated previously in this order, paragraph J of the shareholders' agreement addresses the matter of arbitration, and defines "arbitral matters" as including, but not limited to, "any controversy or claims of any party arising out of or relating to this Agreement." Moreover, "[a]ny arbitration, pursuant to this paragraph, will be binding upon all parties."

¶ 36    However, whether paragraph J of the shareholders' agreement is valid, enforceable, or irrevocable is a matter of contract. *Country Preferred Insurance Co. v. Whitehead*, 2012 IL 113365, ¶ 29. The basic requirements for a valid contract are an offer, acceptance, and consideration. *Melena v. Anheuser-Busch, Inc.*, 219 Ill. 2d 135, 151 (2006). "Moreover, where, as here, an arbitration agreement is a part of a larger agreement, the consideration for the whole agreement is sufficient to support the subsidiary arbitration agreement as well." *Keefe v. Allied Home Mortgage Corp.*, 393 Ill. App. 3d 226, 230 (2009).

¶ 37    With these legal principles in mind, we turn to the parties' agreement. The initial recitals of the shareholders' agreement state that the parties entered their agreement because of their "desire to associate themselves as attorneys in the practice of law under the firm name of Spiros Law, P.C." and also state that the parties to the agreement mutually agree to the agreements' terms and want to "reduce their understanding with regard to their respective rights and duties in writing." The agreement addresses the parties' ownership interest in Spiros Law, their voting

13

rights, vacation time, compensation, and the procedure for withdrawal and buyout from the business.

¶ 38     Here, Loeb acknowledges that she, Spiros, Soucie, and Cain entered into the updated shareholders agreement during the April 2024 annual meeting and that all parties signed it. She does not argue that the agreement is void or is unenforceable. Instead, she argues that the arbitration clause is ambiguous.

¶ 39     First, we must determine if the dispute before the court is within the scope of the arbitration clause of the shareholders' agreement. If so, then the trial court must compel arbitration. *Radiant Star Enterprises, L.L.C. v. Metropolis Condominium Ass'n*, 2018 IL App (1st) 171844, ¶ 52. Here, the defendants set forth their arbitral demands in the December 31, 2024, written communication with Loeb. Additionally, Loeb admits that the complaint she filed in this matter "asserts seven counts that are founded on, or otherwise related to, [the Shareholders' Agreement] that was entered into on or about April 19, 2024[,] by and between Loeb, Spiros, Soucie, and Cain." We conclude that the parties' dispute is within the scope of the arbitration clause.

¶ 40     Second, we consider the parties' intent relative to the arbitration clause. All contracts must be considered in their entirety and must also be objectively interpreted considering "the ordinary expectations of reasonable people." *Suburban Auto Rebuilders, Inc. v. Associated Tile Dealers Warehouse, Inc.*, 388 Ill. App. 3d 81, 92 (2009). For a court to enforce a contract in the context of the parties' intent at the time the agreement was made, "the court must give greater deference to the parties' intent than to any particular words they may have used to express that intent." *Keep Productions, Inc. v. Arlington Park Towers Hotel Corp.*, 49 Ill. App. 3d 258, 263 (1977). The first step in ascertaining the parties' intent is to look to the language used in the agreement (*Owens v. McDermott, Will & Emery*, 316 Ill. App. 3d 340, 344 (2000)), including the overriding purpose of

14

the agreement and the context in which the language was used (*K's Merchandise Mart, Inc. v. Northgate Ltd. Partnership*, 359 Ill. App. 3d 1137, 1142 (2005)). Each provision must be construed with the other provisions. *Thompson v. Gordon*, 241 Ill. 2d 428, 441 (2011). Contracts are construed in their entirety to ascertain the parties' intent because "it is presumed that every clause in the contract was inserted deliberately." *River Plaza Homeowner's Ass'n v. Healey*, 389 Ill. App. 3d 268, 277 (2009). Based on the language of paragraph J of the shareholders' agreement, we find that the parties' intent, when the agreement was created and executed in April 2024 was to allow for arbitration of shareholders' disputes if demanded.

¶ 41     Loeb argues that the arbitration clause wording is unclear as to the method of appointing an arbitrator or arbitrators. More specifically, Loeb argues that the language about which parties are entitled to select said arbitrator or arbitrators and/or whether arbitration should be conducted by one arbitrator or a panel of four or five arbitrators, is ambiguous. We revisit the language of paragraph J which provides: "If the parties cannot agree on a single arbitrator, the three (3) chosen arbitrators will designate a fourth arbitrator."

¶ 42     Having considered the wording of the arbitration provision within the shareholders' agreement, the defendants' arbitration demand, and Loeb's complaint, we conclude that the record amply supports a finding that the issues involved in the parties' dispute fall within the purview of the agreement's arbitration clause. Furthermore, we agree with the defendants that the arbitrator selection language is not ambiguous and allows the three parties at issue in this case to each select his or her own arbitrator and the three chosen arbitrators must select the fourth arbitrator.

¶ 43     The term, "arbitrator," is defined as follows: "1. A neutral person who resolves disputes between parties, esp. by means of formal arbitration. 2. A neutral decision-maker who is appointed directly or indirectly by the parties to an arbitration agreement to make a final and binding decision

15

resolving the parties' dispute." *Arbitrator*, Black's Law Dictionary (12th ed. 2024). Reviewing the language of the arbitration clause, we find that the parties clearly intended for the arbitrators to participate in the resolution of their dispute.

¶ 44 Contractual terms must be construed to avoid making any terms redundant or meaningless. *State ex rel. Skinner v. Lombard Co.*, 106 Ill. App. 3d 307, 311 (1982); *Evans v. Lima Lima Flight Team, Inc.*, 373 Ill. App. 23d 407, 413 (2007). While if a contractual term is subject to two different interpretations, "the court must follow the interpretation that establishes a rational and probable agreement." (Internal quotation marks omitted.) *Highland Supply Corp. v. Illinois Power Co.*, 2012 IL App (5th) 110014, ¶ 26.

¶ 45 We find that in viewing the shareholders' agreement in its entirety from the posture of the parties when they signed the agreement in April 2024 the only logical interpretation is that they intended to have contractual disputes resolved by arbitration. The parties to this agreement were all sophisticated Illinois attorneys who chose to include an arbitration clause in the shareholders' agreement in paragraph J. We conclude that each of the parties intended to submit any disputes to arbitration upon demand.

¶ 46 The parties agree that there is a scrivener's error in paragraph J of the shareholders' agreement. Cain had been added as a shareholder at the firm's April 2024 annual meeting. Thus, if the agreement had been properly amended when Cain became a shareholder, Cain, along with Spiros, Soucie, and Lobe each would have had the ability to designate an arbitrator if the parties were unable to agree upon use of a single arbitrator. With the addition of Cain, paragraph J of the agreement should have been amended to indicate that if the four parties could not agree upon a single arbitrator, then each of the four parties must designate an arbitrator and the four arbitrators would then select a fifth arbitrator. Instead, paragraph J was mistakenly not amended when Cain

16

was added as a shareholder, so the agreement provided that the three parties would each pick an arbitrator and then the chosen arbitrators would select the fourth arbitrator.

¶ 47    However, during the pendency of Loeb's case in the trial court, Cain waived her right to demand arbitration pursuant to the shareholders' agreement. "A contracting party may waive a contractual provision intended to benefit that contracting party." *Takiff Properties Group Ltd. #2 v. GTI Life, Inc.*, 2018 IL App (1st) 171477, ¶ 26. By Cain's waiver of her right to demand arbitration, the trial court maintained the ability to enforce the express language of the arbitration clause—"three (3) chosen arbitrators will designate a fourth arbitrator." Noting the scrivener's error that all parties acknowledged, the trial court enforced the express language of the agreement. Because Cain maintained the right to withdraw her arbitration demand, Loeb cannot object to Cain's withdrawal, as the arbitration demand was a benefit for Cain. *Takiff*, 2018 IL App (1st) 171477, ¶ 26.

¶ 48    We recognize that Loeb claims she did not understand or intend to be bound by the terms of the agreement, but we find this claim to be disingenuous based upon the unambiguous language of paragraph J. Moreover, over a span of 15 years, Loeb signed the agreement containing the identical arbitration clause a substantial number of times.

¶ 49    Alternatively, Loeb argues that the arbitration clause is ambiguous in that the three arbitrators selected by Spiros, Soucie, and Loeb would have no purpose other than to select a fourth arbitrator, who would be the only arbitrator to resolve the dispute. We find such an interpretation of paragraph J to be nonsensical. There would be no point for each party to select his or her own arbitrator if the fourth arbitrator was intended to decide the case alone. In that scenario, "the three (3) chosen arbitrators" would have no purpose and be redundant. The reasonable construction of the plain language of paragraph J of the shareholders' agreement is that a panel of four arbitrators

will preside over the hearing. Any argument to the contrary is meritless. We also note that section 3 of the Act states: "If the arbitration agreement provides a method of appointment of arbitrators, this method shall be followed." 710 ILCS 5/3 (West 2022).

¶ 50                                 B. Reformation of the Agreement

¶ 51    Loeb argues that the trial court's determination that Cain should be excluded from designating an arbitrator served to reform the shareholders' agreement. We disagree. First, as previously stated, with Cain's 2024 addition as a shareholder, the arbitration provision was mistakenly not amended. Prior to Cain's elevation to shareholder-status, there were three shareholders in the firm, Spiros, Soucie, and Loeb. Thus, the arbitration clause provided for each of the three shareholders to select an arbitrator and the three selected arbitrators would select a fourth. When Cain was added as a shareholder, paragraph J should have also been amended to allow for each of the four shareholders to select an arbitrator, with the four chosen arbitrators selecting a fifth arbitrator. However, the acknowledged scrivener's error was not noticed until Loeb filed her lawsuit.

¶ 52    On March 7, 2025, Cain withdrew her demand for arbitration. By withdrawing her demand, the effect of the scrivener's error related to the number of arbitrators as contemplated in paragraph J—one per shareholder—with the selected arbitrators designating a final arbitrator—was eliminated. Thereafter, the trial court enforced the plain language of the agreement as written— for Spiros, Soucie, and Loeb to each select an arbitrator and those three arbitrators would select a fourth arbitrator.

18

¶ 53                                    C. Soucie's Affidavit

¶ 54    Loeb also contends that the trial court's denial of her motion to strike paragraphs 15-18 of

Soucie's affidavit was erroneous. She disputes the defendants' claim that Soucie had personal

knowledge of the statements she made in her affidavit. Paragraphs 15-18 of Soucie's affidavit:

> "15. Sandy [Loeb], Jim [Spiros], Danielle [Cain], and I all intended to update the
>
> arbitration clause to recognize four shareholders instead of three.
>
> 16. Sandy [Loeb], Jim [Spiros], Danielle [Cain], and I overlooked the fact that the
>
> numerical designations 'three (3)' and 'a fourth,' did not reflect our intentions to grant each
>
> shareholder an equal representative right to designate an arbitrator in the event of an arbitral
>
> dispute.
>
> 17. The use of the numbers 'three (3)' and 'a fourth' should have been written as
>
> 'four (4)' and 'a fifth,' but we overlooked the numbers transcribed.
>
> 18. This is consistent with all other relevant provisions of the shareholder agreements
>
> such as all shareholders having equal voting rights."

¶ 55    The defendants maintain that Soucie's affidavit complied with Supreme Court Rule 191(a)

as it was made on the affiant's personal knowledge; consisted of admissible facts; stated relevant

facts and not mere conclusions; contained attached sworn or certified copies of documents upon

which the affiant relied; and affirmatively established that if the affiant was sworn and called to

testify, she would have been able to testify to its contents. Ill. S. Ct. R. 191(a) (eff. Jan. 4, 2013).

¶ 56    In response, Loeb argues that Soucie was not competent to testify to the matters contained

within paragraphs 15-17 of her affidavit "because they propose to state what Loeb and other parties

intended, their intentions, and items they overlooked." She states that Soucie lacked personal

knowledge of Loeb's intent, or of "items" that Loeb may have overlooked when she entered into

19

the arbitration agreement. She also contends that Soucie's affidavit did not recite foundational facts.

¶ 57 Whether there may have been a basis strike Soucie's affidavit, the trial court explicitly stated that it gave no weight to the affidavits filed in reaching its decision in this case. On March 14, 2025, Loeb's attorney asked the trial judge's clerk for a ruling on her motion to strike Soucie's affidavit. That same date, counsel for the defendants indicated that the defendants would agree to an order stating that the court is disregarding the parties' affidavits because the plain language of the arbitration agreement is the best evidence of the parties' intentions. Thereafter, the trial court's clerk emailed the parties and indicated that the court did not grant the motion to strike the affidavits but allowed the affidavits to remain part of the record, and stated: "However, the court did not give any weight to the affidavits in reaching the decision." Therefore, we find that Loeb was not prejudiced by Soucie's affidavit, because even if it failed to comply with Supreme Court Rule 191(a), it was not considered by the trial court in reaching its ruling.

¶ 58                                III. CONCLUSION

¶ 59 For the above reasons, we affirm the order of the Champaign County circuit court to compel arbitration, and dismiss or stay litigation.


¶ 60 Affirmed.